COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder, Frank, Humphreys, Clements, Kelsey,
           McClanahan, Haley, Petty, Beales and Powell
Argued at Richmond, Virginia


DEBORAH ANN STACY
                                                            OPINION BY
v.        Record No. 0863-07-3               JUDGE ELIZABETH A. McCLANAHAN
                                                          DECEMBER 9, 2008
WILLIAM LESLIE STACY


                         UPON A REHEARING EN BANC

               FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
                            Keary R. Williams, Judge

           Robert J. Breimann (Street Law Firm, on briefs), for appellant.

           Gerald L. Gray (Gerald Gray Law Firm, on brief), for appellee.


        Deborah Ann Stacy (wife) appeals the trial court's order terminating, pursuant to Code

§ 20-109(A), the obligation of William Leslie Stacy (husband) to make payments on a mortgage

on the former marital home under the terms of the parties' property settlement agreement (PSA).

Wife contends the court erred in finding the payments constituted spousal support under the PSA

and, therefore, had no authority under Code § 20-109(A) to terminate husband's mortgage

payment obligation.  Wife also claims she is entitled under the PSA to an award of attorney's

fees and costs for this appeal and the proceedings below.

        A panel majority of this Court affirmed the decision of the trial court.  We granted a

petition for rehearing *en banc* and stayed the mandate of the panel decision.  Upon rehearing *en

banc*, we reverse the trial court and remand for the trial court's consideration of wife's request

for attorney's fees and costs under the PSA.

I. BACKGROUND

Husband and wife divorced in 2001 after entering into a PSA, wherein the parties expressly "waive[d]" spousal support. The parties also agreed that wife would receive the marital home and husband would be solely responsible for payment of the "remaining mortgage indebtedness" on the home. The trial court approved the parties' PSA and incorporated it by reference into the final decree of divorce. Upon entry of the final decree, husband, pursuant to the PSA, transferred his interest in the marital home to wife and "refinanced the [b]ank mortgage obligation into a [p]romissory [n]ote solely in his name." [1]

In 2006, husband, citing Code § 20-109, filed a petition seeking to terminate his mortgage payment obligation under the PSA based on the claim wife had been cohabitating with an individual in a relationship analogous to marriage for several years. Under Code § 20-109(A), spousal support is subject to termination under certain circumstances, including the payee's cohabitation analogous to marriage for a year or more.[2] In response, wife stipulated to

_____

[1] Parties' written statement of facts, paragraph 4, filed pursuant to Rule 5A:8.

[2] Code § 20-109(A) provides as follows:

Upon petition of either party the court may increase, decrease, or terminate the amount or duration of any spousal support and maintenance that may thereafter accrue, whether previously or hereafter awarded, as the circumstances may make proper. Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997, the court shall terminate spousal support and maintenance unless (i) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the evidence that termination of such support would be unconscionable. The provisions of this subsection shall apply to all orders and decrees for spousal support, regardless of the date of the suit for initial setting of support, the date of entry of any such order or decree, or the date of any petition for modification of support.

- 2 -

her involvement in the alleged relationship for more than a year.  She argued, however, that under the express terms of the PSA husband's mortgage payment obligation was not spousal support; rather, it was part of the parties' equitable distribution, thus negating Code § 20-109(A)'s applicability and the court's authority to terminate the obligation.

Neither party argued that the PSA was ambiguous, and the trial court found the PSA was unambiguous.[3]  The court then "classifie[d]" husband's third party mortgage payments as spousal support, and thereby terminated the obligation to the bank (a non-party) pursuant to Code § 20-109(A) on cohabitation grounds.  In doing so, the court relied on language in paragraph 9 of the PSA in which the parties stipulated that, while husband's mortgage payments "were not direct support payments being made to wife," they were "in the nature of support," and therefore "non-dischargeable" by husband in any bankruptcy proceeding.[4]

## II.  ANALYSIS

### A.  Termination of Husband's Mortgage Payment Obligation

Wife argues the trial court erred in "re-writ[ing]" the parties' PSA when it characterized husband's third party mortgage payments as "spousal support," contrary to the express terms of the PSA, and in terminating the obligation under Code § 20-109(A) based on that erroneous interpretation.  We agree.

The trial court's interpretation of the PSA is an issue of law that we review *de novo*. Palmer & Palmer Co., LLC v. Waterfront Marine Constr., Inc., 276 Va. 285, 289, 662 S.E.2d 77,

---

[3] "A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used."  Plunkett v. Plunkett, 271 Va. 162, 168, 624 S.E.2d 39, 42 (2006) (citations and internal quotation marks omitted).

[4] As explained, *infra*, under bankruptcy law, an obligation "in the nature of support" benefiting an ex-spouse is non-dischargeable; however, it may be deemed as such even if the obligation is not found to be spousal support under state law.

- 3 -

80 (2008) (citation omitted); <u>Henderlite v. Henderlite</u>, 3 Va. App. 539, 541, 351 S.E.2d 913, 913-14 (1987); <u>see</u> <u>Eure v. Norfolk Shipbuilding & Drydock Corp.</u>, 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002) (an appellate court has "'an equal opportunity to consider the words of the contract within the four corners of the instrument itself'" (quoting <u>Wilson v. Holyfield</u>, 227 Va. 184, 188, 313 S.E.2d 396, 398 (1984)).

Code § 20-109(A) is subject to the statutory proviso, under subsection C, that no order "shall be entered except in accordance with [the PSA]." Code § 20-109(C). "[T]his requires the trial judge to examine the parties' agreement to ascertain whether the relief sought by the moving party is encompassed within the terms of the agreement." <u>Rutledge v. Rutledge</u>, 45 Va. App. 56, 63, 608 S.E.2d 504, 508 (2005) (citing <u>White v. White</u>, 257 Va. 139, 144-45, 509 S.E.2d 323, 326 (1999)). Accordingly, a PSA is governed by the same rules of construction applied to other contracts. <u>Plunkett v. Plunkett</u>, 271 Va. 162, 166, 624 S.E.2d 39, 41 (2006); <u>White</u>, 257 Va. at 144, 509 S.E.2d at 325; <u>Irwin v. Irwin</u>, 47 Va. App. 287, 292-93, 623 S.E.2d 438, 441 (2005). When applying these rules, the court's function is to

> "construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."

<u>Irwin</u>, 47 Va. App. at 293, 623 S.E.2d at 441 (quoting <u>Wilson</u>, 227 Va. at 187, 313 S.E.2d at 398). That is, "[w]hen a contract is clear and unambiguous, it is the court's duty to interpret the contract, as written." <u>Palmer & Palmer Co.</u>, 276 Va. at 289, 662 S.E.2d at 80 (citation omitted); <u>see</u> <u>PMA Capital Ins. Co. v. US Airways, Inc.</u>, 271 Va. 352, 360-61, 626 S.E.2d 369, 374 (2006) (reversing trial court on contract interpretation after concluding the court "essentially re-wrote the [contract] and made a new contract" in derogation of its "plain language").

Applying these principles, our Supreme Court and this Court have rejected arguments that mortgage payments constituted spousal support under the respective settlement agreements at issue. In White, 257 Va. 139, 509 S.E.2d 325, an agreement of the husband to pay the mortgage on the marital home conveyed to the wife was ratified by the trial court and incorporated into the parties' final divorce decree. The decree stated that "'[Mr. White] entered into [the] agreement . . . with respect to maintenance and support.'" Id. at 142, 509 S.E.2d at 324. Three years after the divorce, Ms. White sold the home, at which time the balance due on the mortgage was paid from the proceeds of the sale. Though Mr. White made the payments to the mortgagee bank as called for under the agreement until the time of sale of the home, Ms. White filed a complaint seeking an order requiring Mr. White to show cause why he should not be held in contempt for failure to then make payments to her in the amount of the mortgage payments. Id. The trial court ruled in Ms. White's favor on her petition, holding that the agreement to pay the mortgage constituted a lump sum award to her payable in installments as "maintenance and support" under the terms of the divorce decree. Id. at 143, 509 S.E.2d at 325.

The Supreme Court reversed the trial court's decision, ruling as follows:

> The agreement clearly obligates Mr. White to pay the $30,000 mortgage on the house . . . to [the] Bank in 120 monthly installments. It contains no provision for Mr. White to make any payments to Mrs. White. Moreover, and of particular significance in this case, nothing within the express terms of the agreement evinces any intent of the parties that Mr. White's obligation would survive the satisfaction of the mortgage debt, regardless of the manner in which that debt was extinguished.
> Accordingly, we hold that the agreement obligated Mr. White to make payments on the mortgage on the marital home so long as that debt existed, but did not obligate him to pay a fixed sum to the wife in installments with interest, as she alleged in her bill of complaint and as the trial court subsequently found in the show cause hearing.

Id. at 145, 509 S.E.2d at 326. The Court concluded that "[t]he language of the final decree of divorce referencing the agreement as 'an agreement . . . with respect to maintenance and support' could not, and did not, alter *the intent of the parties as expressed in the agreement*." Id. (emphasis added).

Similarly, in Owney v. Owney, 8 Va. App. 255, 260, 379 S.E.2d 745, 748 (1989), this Court held that the trial court erred in "characteriz[ing]" as "spousal support" the husband's obligation, under the parties' property settlement agreement, to make mortgage payments on the marital home. Like the instant case, the parties' agreement in Owney required that husband convey his interest in the marital residence to wife and that he assume the mortgage payments on the first deed of trust held by the mortgagee bank. The agreement also "specifically release[d] the husband and wife 'of any claim either might have for alimony or support.'" Id. After husband defaulted on the mortgage, wife paid off the obligation and petitioned the trial court to require husband to make the payments to her as spousal support under the parties' PSA. The trial court granted wife's petition as requested. Id. at 257-58, 379 S.E.2d at 747. On appeal, we reversed the trial court and remanded the case for further consideration of husband's continuing liability on the mortgage obligation, if any. In doing so, however, we concluded that the trial court's characterization of husband's third party debt obligation as spousal support, and its award of those debt payments to wife as support, "controvene[d] the plain language of the [parties'] agreement." Id. at 260, 379 S.E.2d at 748.

Here, the parties expressly waived spousal support in paragraph 8 of the PSA, which provides in its entirety as follows: "8. SPOUSAL SUPPORT: Each party hereby waives any present or future right to receive any support or maintenance from the other."

With regard to husband's mortgage obligation, paragraph 4 of the PSA (under the heading "DEBTS") specifically provides, in relevant part, that husband "shall be responsible for

the payment of . . . [t]he remaining mortgage indebtedness [on the marital residence]"; husband "shall be solely responsible" for this debt; and husband "shall indemnify and hold the [w]ife harmless from any and all . . . claims or demands, including, but not limited to, attorney's fees" regarding this debt. In conjunction with these provisions, husband further agreed, in paragraph 19, to convey to wife all of his rights, title and interest in the marital residence. Accordingly, upon entry of the final divorce decree, which incorporated the PSA, husband deeded his undivided interest in the marital residence to wife, and then refinanced the bank's mortgage on the property with a promissory note solely in his name.

Consistent with paragraph 4's indemnification and hold harmless provisions in favor of wife regarding husband's assumption of the mortgage debt, paragraph 5 (under the heading "CREDIT OF PARTIES") provides, in part, that "[n]either party shall at any time hereafter . . . contract any debts, charges or liabilities of any nature whatsoever for which the other party shall or may become liable to answer." Furthermore, "[e]ach party covenants and agrees to save and keep the other party free and harmless from any and all debts, charges and liabilities which may hereinafter be incurred or contracted by such party."

Challenging the import of these plainly stated provisions, husband contends the language in paragraph 9[5] of the PSA characterizing his mortgage payment obligation as "in the nature of

_____

[5] Paragraph 9 (under the heading "PAYMENTS IN THE NATURE OF SUPPORT") provides, in its entirety, as follows:

Nothwithstanding the provision set forth in [p]aragraph 8, above, the [h]usband agrees that all of the payments that he is assuming by virtue of this [a]greement are being made to benefit the [w]ife, and are, therefore, payments being made "in the nature of support" on the [w]ife's behalf. *Although they are not direct support payments being made to the [w]ife, the parties acknowledge and agree that they are, nevertheless, of the type and nature of payment which would be deemed to be non-dischargeable by the [h]usband in any proceeding, because of their direct benefit to the [w]ife.* Should the [h]usband ever attempt to discharge these obligations

- 7 -

support" renders "ineffective" the parties' express waiver of spousal support in paragraph 8, and makes the obligation subject to termination under Code § 20-109(A). Settled principles of contract construction, however, dictate that such was not the parties' contractual intent.

In giving effect to the intention of the parties "as expressed by them in the words they have used," Irwin, 47 Va. App. at 293, 623 S.E.2d at 441 (citation and internal quotation marks omitted), we are not to treat any word or clause in the PSA "'as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly,'" Dominion Sav. Bank, FSB v. Costello, 257 Va. 413, 417, 512 S.E.2d 564, 567 (1999) (quoting D.C. McClain, Inc. v. Arlington Co., 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (1995)). At the same time, we must construe the contract as a whole. Quadros & Assocs., P.C. v. City of Hampton, 268 Va. 50, 55, 597 S.E.2d 90, 93 (2004) (citations omitted). In other words, "the meaning of a contract 'is to be gathered from all its associated parts assembled as a unitary expression of the agreement of the parties.'" Sully Station II Community Ass'n, Inc. v. Dye, 259 Va. 282, 284, 525 S.E.2d 555, 556 (2000) (quoting Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983)); see Virginian Ry. Co. v. Hood, 152 Va. 254, 258, 146 S.E. 284, 285 (1929) (explaining that a contract's provisions "are to be harmonized when possible" and "effect . . . given to every stipulation when it can reasonably be done").

---

> in such a way as would result in them being imposed upon the [w]ife, not only does he agree that he shall continue to be liable for them to the creditor, but he also acknowledges that the [c]ourt may directly impose any such discharged obligations upon him as support, whether spousal or child, regardless of any prior waivers, and even if to do so exceeds any presumptive amounts established by the legislature, to the [w]ife directly, and also that he will be responsible for the [w]ife's attorney fees and [c]ourt costs related to any proceeding which may arise relative to the matters contained in these [p]aragraphs.

(Emphasis added.)

When all of the provisions of the PSA are considered as a whole and read in context, with reasonable meaning given to each provision, it is evident that paragraph 9 was written with a certainty intended to accomplish one purpose only: to ensure, to the extent possible, that should husband ever elect in the future to file a petition for bankruptcy, the mortgage obligation being assumed by him would not be dischargeable in the bankruptcy proceeding. This prohibition was made possible because, under bankruptcy law, an obligation found to be "in the nature of support" is a non-dischargeable debt under 11 U.S.C. § 523(a)(5). See, e.g., Brunson v. Austin (In re Austin), 271 B.R. 97 (Bankr. E.D. Va. 2001) (explaining multi-factor test for determining whether a particular obligation is "in the nature of support" under 11 U.S.C. § 523(a)(5)). Therefore, when placing this prohibition in paragraph 9 immediately after the parties' express and definitive waiver of any right to demand or receive spousal support from the other, the parties surely had no intent to render paragraph 8 meaningless and create an obligation of spousal support. As used in the PSA, the phrase "in the nature of support" was technical language from the Bankruptcy Code and limited to its bankruptcy context. Husband's third party debt obligation was thus never spousal support as contemplated by Code § 20-109. To hold otherwise would amount to "alter[ing] the intent of the parties as expressed in [their] agreement." White, 257 Va. at 145, 509 S.E.2d at 326. The obligation can still be viewed, however, as "in the nature of support" so as to render it non-dischargeable under bankruptcy law. "'[A] debt could be in the "nature of support" under [11 U.S.C. §] 523(a)(5) even though it would not legally qualify as alimony or support under state law.'" In re Gianakas, 917 F.2d 759, 762 (3rd Cir. 1990) (quoting In re Yeates, 807 F.2d 874, 878 (10th Cir. 1986)).

The trial court thus erred in treating husband's mortgage payment obligation as spousal support under Code § 20-109, and terminating it on cohabitation grounds. Under the plainly stated terms of the parties' PSA, it was an unconditional third party obligation incurred by

husband as part of the parties' equitable distribution—with spousal support having been expressly waived. As such, the trial court had no authority to terminate the obligation.

## B. Attorney's Fees and Costs Pursuant to the PSA

Wife also argues she is entitled under the PSA to an award of attorney's fees and costs for this appeal and the proceedings below. Paragraph 24 of the PSA states: "The parties agree that if one party incurs any expenses in the enforcement of any of the provisions of this [a]greement, the other shall be responsible for, and shall pay forthwith, any and all expenses incurred, including, but not limited to, reasonable attorney's fees." In ruling in husband's favor, the trial court did not award attorney's fees to wife. Because we reverse the judgment of the trial court and rule in wife's favor, we remand the case to the trial court for consideration of wife's request for attorney's fees and costs under the PSA. See Rutledge, 45 Va. App. at 62, 608 S.E.2d at 507 (contractual provisions for attorney fees in PSA are enforceable in same manner as any other terms); Sanford v. Sanford, 19 Va. App. 241, 249-50, 450 S.E.2d 185, 190 (1994) (remanding case for award of attorney fees to wife under PSA for enforcement action); see generally Ulloa v. QSP, Inc., 271 Va. 72, 81-83, 624 S.E.2d 43, 49-50 (2006) (analyzing award of attorney fees under employment contract).

## III. CONCLUSION

For these reasons, we reverse the trial court's order terminating husband's mortgage payment obligation and remand for consideration of wife's request for attorney's fees and costs for this appeal and the proceedings below pursuant to paragraph 24 of the PSA.

Reversed and remanded.

- 10 -

# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **20th** *day of* **May, 2008**.

Deborah Ann Stacy, Appellant,

  against           Record No. 0863-07-3
                     Circuit Court No. 4-06

William Leslie Stacy, Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On May 6, 2008 came the appellant, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on April 22, 2008, and grant a rehearing *en banc* on the issues raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issues raised therein, the mandate entered herein on April 22, 2008 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

Notwithstanding the provisions of Rule 5A:35, the following briefing schedule hereby is established: Appellant shall file an opening brief upon rehearing *en banc* within 21 days of the date of entry of this order; appellee shall file an appellee's brief upon rehearing *en banc* within 14 days of the date on which the opening brief is filed; and appellant may file a reply brief upon rehearing *en banc* within 14 days of the date on which the appellee's brief is filed. The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter.  It is further ordered that the appellant shall file twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Present:   Judges McClanahan, Petty and Beales
Argued at Salem, Virginia


DEBORAH ANN STACY

                                               MEMORANDUM OPINION[*] BY
v.      Record No. 0863-07-3              JUDGE WILLIAM G. PETTY
                                                 APRIL 22, 2008

WILLIAM LESLIE STACY


FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
Keary R. Williams, Judge

Robert J. Breimann (Street Law Firm, on briefs), for appellant.

Gerald L. Gray (Gerald Gray Law Firm, on brief), for appellee.


Deborah Ann Stacy (wife) appeals a final order of the trial court that terminated the

obligation of William Leslie Stacy (husband) to make mortgage payments pursuant to a property

settlement agreement.

On appeal, she presents the following questions:  (1) whether the trial court had the authority

to amend or alter the parties' property settlement agreement (the "agreement") after it had been

incorporated into the final decree of divorce; (2) whether the trial court erred in construing the

mortgage payments by husband to be alimony or spousal support subject to termination under Code

§ 20-109[6]; and (3) whether the trial court erred in failing to award wife an interest in husband's

pension after "amending" the parties' agreement.

For reasons set forth below, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[6] In wife's brief, she presented four questions.  Questions two and three essentially
presented the same issue.  Therefore, we only set forth the issue once as issue two.

In January 2001, the trial court entered a final decree of divorce that ratified, confirmed, approved, and incorporated by reference the parties' agreement.[7] The agreement gave wife the marital residence, and Paragraph 4 of the agreement, entitled "Debts," obligated husband to continue paying the mortgage payments. According to Paragraph 8 of the agreement, entitled "Spousal Support," the parties waived "any present or future right to receive any support or maintenance from the other."

Despite the parties' purported waiver of spousal support, Paragraph 9 of the agreement was entitled "Payments in the Nature of Support." It reads as follows:

> Notwithstanding the provision set forth in Paragraph 8, above, the [h]usband agrees that all of the payments that he is assuming by virtue of this Agreement are being made to benefit the [w]ife, and are, therefore, payments being made "in the nature of support" on the [w]ife's behalf. Although they are not direct support payments being made to the [w]ife, the parties acknowledge and agree that they are, nevertheless, of the type and nature of payment which would be deemed to be non-dischargeable by the [h]usband in any [b]ankruptcy proceeding, because of their direct benefit to the [w]ife. Should the [h]usband ever attempt to discharge these obligations in such a way as would result in them being imposed upon the [w]ife, not only does he agree that he shall continue to be liable for them to the creditor, but he also acknowledges that the Court may directly impose any such discharged obligations upon him as support, whether spousal or child, regardless of any prior waivers, and even if to do so exceeds any presumptive amounts established by the legislature, to the [w]ife directly, and also that he will be responsible for the [w]ife's attorney['s] fees and [c]ourt costs related to any proceeding which may arise relative to the matters contained in these proceedings.

In August 2001, wife began living with a man to whom she was not married. Wife admits that they have cohabited since that time and continue to cohabit in a relationship analogous to marriage. On January 5, 2006, husband filed a petition to terminate his obligation to make monthly

---

[7] The parties executed the agreement on April 29, 1999.

mortgage payments pursuant to Code § 20-109(A). On February 20, 2007, the trial court issued a letter opinion granting husband's petition to terminate payment of the mortgage obligation pursuant to Code § 20-109(A).[8] It is from this decision that wife appeals.

## II. ANALYSIS

### A. Termination of Payments

In its letter opinion, the trial court stated that "neither party argue[d] that the PSA [was] ambiguous. Finding the PSA is unambiguous the Court has construed the PSA accordingly." Thereafter, the trial court accepted husband's interpretation of the agreement. On appeal, wife asserts that the trial court erred when it accepted husband's argument and terminated husband's duty to make the mortgage payments because it "'re-wrote' the parties' agreement so as to construe a mortgage obligation payable by [husband], and recharacterized that note obligation as one of spousal support or spousal maintenance."

On appeal, both parties still maintain that the agreement is unambiguous. Husband argues that despite the waiver of spousal support in Paragraph 8, the language in Paragraph 9 supersedes that waiver. Therefore, he contends, because all payments by husband are "in the nature of support" they are subject to termination under Code § 20-109(A). Wife, however, claims that the language contained in the agreement supports her position that the parties mutually waived all rights to receive support from one another. Wife asserts that the trial court's acceptance of husband's argument was unreasonable and that the plain meaning of the agreement is only susceptible to the interpretation that supports her argument and, of necessity, excludes the interpretation argued by husband and accepted by the trial court.

---

[8] The trial court applied Code § 20-109(A), as amended by the General Assembly in 2001, even though the parties signed the agreement in April 1999.

The legal principles governing this case are well established.  Although "Code § 20-109(A) empowers trial courts to modify a spousal support award, . . . Code § 20-109(C) expressly limits the court's authority, . . . according to the terms of a stipulation or contract signed by the parties."  Blackburn v. Michael, 30 Va. App. 95, 100, 515 S.E.2d 780, 783 (1999).  Likewise, our Supreme Court has held that, when the parties' agreement has been affirmed, ratified, and incorporated into the final divorce decree, "'[Code] § 20-109 restricts the court's jurisdiction over awarding "alimony, suit money, or counsel fee" to the terms of the contract.'"  Thomas v. Thomas, 216 Va. 741, 743, 222 S.E.2d 557, 559 (1976) (quoting McLoughlin v. McLoughlin, 211 Va. 365, 368, 177 S.E.2d 781, 783 (1970)).  "As these cases hold, the statutory language of Code § 20-109(C) restricts the judge to decreeing according to the terms of the agreement."  Rutledge v. Rutledge, 45 Va. App. 56, 61-62, 608 S.E.2d 504, 507 (2005) (internal quotation marks and citations omitted).

However, in cases involving cohabitation, remarriage, or death, the stipulation or agreement must expressly preclude termination of the contractual duty of spousal support on these grounds.  Newman v. Newman, 42 Va. App. 557, 570, 593 S.E.2d 533, 540 (2004).  If the agreement fails to expressly preclude termination, the contractual obligation may be terminated.  See Hardesty v. Hardesty, 40 Va. App. 663, 581 S.E.2d 213 (2003) (*en banc*).

In determining the nature of the payments at issue we are mindful that marital property settlement agreements are "contracts subject to the same rules of formation, validity, and interpretation as other contracts."  Bergman v. Bergman, 25 Va. App. 204, 211, 487 S.E.2d 264, 267 (1997) (citing Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986)).  "When the terms of a disputed provision are clear and definite, it is axiomatic that they are to be applied according to their ordinary meaning."  Smith, 3 Va. App. at 514, 351 S.E.2d at 595 (citations

- 4 -

omitted). "Where there is no ambiguity in the terms of a contract, we must construe it as written, and we are not at liberty to search for the meaning of the provisions beyond the pertinent instrument itself." Id. at 514, 314 S.E.2d at 596 (citations omitted).[9]

However, whether a writing is ambiguous is a matter of law, not fact, and subject to our *de novo* review. Bergman, 25 Va. App. at 211, 487 S.E.2d at 267 (citing Langman v. Alumni Ass'n of the Univ. of Virginia, 247 Va. 491, 498, 442 S.E.2d. 669, 674 (1994)). An agreement is ambiguous when it is objectively reasonable to understand the language in the contract "in more than one way" or to decide that it "refers to two or more things at once." Pocahontas Mining L.L.C. v. Jewell Ridge Coal Corp., 263 Va. 169, 173, 556 S.E.2d 769, 771 (2002). We should not conclude that a contract is ambiguous "simply because the parties to the contract disagree about the meaning of its language." Id. Rather, the task of the reviewing court is "to determine . . . whether both [of the competing interpretations], though contradictory, are nonetheless reasonable." Vilseck v. Vilseck, 45 Va. App. 581, 589, 612 S.E.2d 746, 749-50 (2005).

Finally, on appeal, "[t]he trial court's judgment is presumed to be correct, and the burden is on the appellant to present us a sufficient record from which we can determine whether the lower court has erred." Twardy v. Twardy, 14 Va. App. 651, 658, 419 S.E.2d 848, 852 (1992) (citations and internal quotation marks omitted).

---

[9] While the dissent correctly notes that we interpret an unambiguous contract based on the "words of the contract [contained] within the four corners of the instrument itself," Brizzolara v. Sherwood Mem'l Park, Inc., 274 Va. 164, 180, 645 S.E.2d 508, 514 (2007), the dissent goes on to base its interpretation of the PSA on matters outside those four corners, drawing inferences from facts contained in the written statement of facts, such as husband's refinancing of the mortgage.

Had the trial court determined that the PSA was ambiguous, such extrinsic evidence indicative of the parties' intent would have been necessary to the resolution of this case. See Plunkett v. Plunkett, 271 Va. 162, 169, 624 S.E.2d 39, 43 (2006); cf. Cave Hill Corp v. Hiers, 264 Va. 640, 646, 570 S.E.2d 790, 794 (2002) (extrinsic evidence of parties' "understanding" of a contract is inadmissible when the contract is unambiguous). However, the trial court held that the PSA is unambiguous – a holding that wife does not challenge on appeal. Hence, we constrain ourselves to examining only the terms of the PSA itself in deciding this case.

We find wife's argument that the agreement can only be read in the manner she proposes to be unpersuasive. Our review of the language of the agreement leads us to conclude that the agreement may reasonably be read to support either the interpretation proposed by wife or that proposed by husband. Paragraph 9 is ambiguous and internally inconsistent with the remainder of the agreement. The husband's obligation to continue making mortgage payments, imposed under a section of the agreement entitled "Debt," would normally be construed as the equitable distribution of the marital property, not spousal support. See Code § 20-107.3(E); cf. Oweny v. Oweny, 8 Va. App. 255, 260, 379 S.E.2d 745, 748 (1989) (reversing when the trial court, relying on extrinsic evidence of the parties' intent, characterized mortgage payments as spousal support in a manner "plainly inconsistent with the contract"). However, Paragraph 9 states that "[n]otwithstanding . . . Paragraph 8," the payments are "in the nature of support on behalf of the wife." While Paragraph 9 also contains language discussing how these payments should be construed in the event of a bankruptcy filing by the husband, it does not expressly limit its application to that contingency. Thus, we conclude the agreement can reasonably be understood in more than one way. Pocahontas Mining, 263 Va. at 173, 556 S.E.2d at 771.

Having concluded that the agreement is ambiguous, we cannot hold that the trial court erred in adopting the interpretation it did.[10] On its face, the agreement is equally susceptible to either of two interpretations. Thus, the conclusion of the trial court that Paragraph 9 converted all payments under the agreement to spousal support cannot be said to be incorrect; it is just as

---

[10] The dissent characterizes our holding as "accept[ing] the trial court's construction of the agreement . . . ." Instead, our holding is quite narrow: we merely hold that, viewing the language of the PSA, we cannot say that wife's interpretion of the contract is any more reasonable than husband's, which was adopted by the trial court. Accordingly, wife has not met her burden on appeal of establishing that the trial court's ruling was in error.

plausible a conclusion as the alternative. Wife, therefore, has failed to carry her burden to establish that the trial court erred. [11]

Because we conclude that the trial court did not err in construing the mortgage payments to be spousal support, we must further conclude that the trial court was correct when it terminated these payments pursuant to Code § 20-109(A).

### B. Husband's Pension

Lastly, wife asserts the trial court erred in failing to award wife an interest in husband's pension after modifying the parties' agreement. On appeal, wife contends "for reasons unknown, the [trial court] failed to address [her] request." Because the trial court never ruled on this issue below, we cannot do so for the first time on appeal. The purpose of the contemporaneous objection rule is to "afford the trial court the ability to address an issue. If that opportunity is not presented to the trial court, there is no ruling by the trial court on the issue, and thus no basis for review or action by this Court on appeal." Riverside Hospital, Inc. v. Johnson, 272 Va. 518, 526, 636 S.E.2d 416, 420 (2006); see also Riner v. Commonwealth, 268 Va. 296, 325, 601 S.E.2d 555, 571-72 (2004) (holding that failure to request a ruling from the trial court, by itself, waives the issue on appeal).

### III. CONCLUSION

We affirm the trial court's interpretation of the parties' agreement.

Affirmed.

---

[11] Because the trial court accepted the parties' agreement that the PSA was unambiguous, it did not hear any evidence regarding the intent of the parties. In addition, wife did not argue either before the trial court or on appeal that the trial court should consider such evidence in the event it found the agreement to be ambiguous. Therefore, we are precluded from considering the intent of the parties in construing the contract. Vilseck, 45 Va. App. at 588-91, 612 S.E.2d at 749.

McClanahan, J., dissenting.

Under Code § 20-109, spousal support is subject to termination by a trial court under certain circumstances, including the payee's cohabitation analogous to marriage. Here, however, the parties, William Leslie Stacy (husband) and Deborah Ann Stacy (wife), expressly waived in their property settlement agreement ("PSA") "any present or future right to receive any [spousal] support or maintenance from the other." Husband's obligation was, instead, an unconditional obligation to pay a debt owed to *a third party*, i.e., the mortgagee of the marital residence. Thus, upon entry of the parties' final decree of divorce, which incorporated the PSA, husband "refinanced the [b]ank mortgage obligation into a [p]romissory [n]ote *solely in his name*."[12] (Emphasis added.) The parties did not characterize this third party obligation as spousal support in the PSA (which would have been inconsistent with their clear waiver of support in paragraph 8). Rather, the parties characterized the mortgage obligation, pursuant to principles of bankruptcy law, as "non-dischargeable" debt. The parties further stipulated that husband's satisfaction of the obligation was "not direct support payments" to wife, but merely "'in the nature of support.'"[13] This characterization of the obligation is not internally inconsistent with the remainder of the agreement. It is, in fact, further evidence that the mortgage payment was not spousal support but a continuing and unconditional third party obligation of husband. See Owney v. Owney, 8 Va. App. 255, 260, 379 S.E.2d 745, 748 (1989) (holding trial court erred in

_____

[12] Parties' written statement of facts, paragraph 4, filed pursuant to Rule 5A:8. Contrary to the majority's assertion, this factual statement is necessarily relevant because it was this third party debt obligation that the trial court terminated—the very ruling that is the issue in this case. This factual statement, however, is not critical to my reading of the PSA within its "four corners." The statement simply documents husband's action taken pursuant to the explicit terms of the agreement upon its execution.

[13] As explained, *supra*, under bankruptcy law, obligations "in the nature of support" are non-dischargeable, and may be deemed as such even if the obligation is not found to be spousal support under state law.

treating husband's third party debt obligation as spousal support under property settlement agreement).

Accordingly, I would hold that, as both parties assert, the agreement is not ambiguous; husband's third party debt obligation is not spousal support under Code § 20-109, and the trial court thus had no authority, as a matter of law, to terminate this obligation—a debt husband owed to an entity that is not even a party to this action. See Brizzolara v. Sherwood Memorial Park, Inc., 274 Va. 164, 180, 645 S.E.2d 508, 514 (2007) ("Where the judgment of the trial court is based upon its interpretation of written documents, we review the issue *de novo* because we have an equal opportunity to consider the words of the contract within the four corners of the instrument itself." (citations, internal quotation marks, and internal brackets omitted)).[14] Therefore, I respectfully dissent.

In Owney, 8 Va. App. at 260, 379 S.E.2d at 748, this Court held that the trial court erred in "characteriz[ing]" as "spousal support" the husband's obligation, under the parties' property settlement agreement, to make mortgage payments on the marital residence. Like the instant case, the parties' agreement in Owney required that husband convey his interest in the marital residence to wife and that he assume the mortgage payments on the first deed of trust held by the Farmers Home Administration. The agreement also "specifically release[d] the husband and wife 'of any claim either might have for alimony or support.'" Id. In reversing the trial court, we concluded that the trial court's characterization of husband's third party debt obligation as spousal support, and award of those debt payments to wife as support, "controvene[d] the plain language of the agreement." Id.

---

[14] See also Virginia Elec. & Power Co. v. Northern Virginia Reg'l Park Auth., 270 Va. 309, 315, 618 S.E.2d 323, 326 (2005) ("Whether a [contract] is ambiguous is a question of law . . . . As such, we review the judgment of the trial court *de novo*." (citations omitted)); Perel v. Brannan, 267 Va. 691, 698, 594 S.E.2d 899, 903 (2004) ("[W]e review the trial court's interpretation of covenants and other written documents *de novo*.").

In the instant case, paragraph 4 of the parties' PSA (under the heading "Debts") specifically provides, in relevant part, that husband "shall be responsible for the payment of . . . [t]he remaining mortgage indebtedness [on the marital residence]"; husband "shall be solely responsible" for this debt; and husband "shall indemnify and hold the [w]ife harmless from any and all . . . claims or demands, including, but not limited to, attorney's fees" regarding this debt. In conjunction with these provisions, husband further agrees, in paragraph 19, to convey to wife all of his rights, title and interest in the marital residence. Accordingly, upon entry of the final divorce decree, which incorporated the PSA, husband deeded his undivided interest in the marital residence to wife, and then refinanced the bank's mortgage on the property with a promissory note solely in his name.

Consistent with husband's indemnification and hold harmless provisions in favor of wife regarding his assumption of the mortgage debt in paragraph 4, paragraph 5 (under the heading "Credit of Parties") provides, in part, that "[n]either party shall at any time hereafter . . . contract any debts, charges or liabilities of any nature whatsoever for which the other party shall or may become liable to answer." Furthermore, "[e]ach party covenants and agrees to save and keep the other party free and harmless from any and all debts, charges and liabilities which may hereinafter be incurred or contracted by such party." As explained above, husband refinanced the bank mortgage obligation into a promissory note solely in his name after the PSA was executed and incorporated into the final decree of divorce.

The majority recognizes that, but for paragraph 9 of the PSA,[15] husband's above-stated third party debt obligation, governed by paragraphs 4 and 5, "would normally be construed as

---

[15] Paragraph 9 (under the heading "Payments in the Nature of Support") provides, in its entirety, as follows:

Nothwithstanding the provision set forth in [p]aragraph 8, above, the [h]usband agrees that all of the payments that he is assuming by virtue

- 10 -

equitable distribution of the marital property, not spousal support." This interpretation, the majority further acknowledges, is "reinforced by the provision waiving spousal support" in paragraph 8, which (under the heading "Spousal Support") provides in unequivocal terms: "Each party hereby waives any present or future right to receive any support or maintenance from the other." But then, without due regard to context, the majority concludes that the parties' characterization of husband's debt obligation as "'in the nature of support,'" set forth in paragraph 9, is ambiguous, accepts the trial court's construction of the agreement, and thus affirms the trial court in holding that the parties intended the husband's debt obligation to be spousal support for purposes of Code § 20-109. In doing so, the majority implicitly holds, as husband argues, that the parties' waiver of marital support in paragraph 8 is rendered meaningless by the language in paragraph 9. Well-established principles regarding construction of contracts, however, which provide the necessary framework for a correct reading of the PSA, dictate that such was not the parties' intent.

---

of this [a]greement are being made to benefit the [w]ife, and are, therefore, payments being made "in the nature of support" on the [w]ife's behalf. *Although they are not direct support payments being made to the [w]ife, the parties acknowledge and agree that they are, nevertheless, of the type and nature of payment which would be deemed to be non-dischargeable by the [h]usband in any proceeding, because of their direct benefit to the [w]ife.* Should the [h]usband ever attempt to discharge these obligations in such a way as would result in them being imposed upon the [w]ife, not only does he agree that he shall continue to be liable for them to the creditor, but he also acknowledges that the [c]ourt may directly impose any such discharged obligations upon him as support, whether spousal or child, regardless of any prior waivers, and even if to do so exceeds any presumptive amounts established by the legislature, to the [w]ife directly, and also that he will be responsible for the [w]ife's attorney fees and [c]ourt costs related to any proceeding which may arise relative to the matters contained in these [p]aragaphs.

(Emphasis added.)

- 11 -

The PSA is subject to the same rules of construction as other contracts. Irwin v. Irwin, 47 Va. App. 287, 292-93, 623 S.E.2d 438, 441 (2005) (citation omitted). Our purpose in construing the agreement is, therefore, to effectuate the "intention of the parties as expressed by them in the words they have used." Quadros & Assocs., P.C. v. City of Hampton, 268 Va. 50, 54, 597 S.E.2d 90, 93 (2004) (citations and internal quotation marks omitted). We are not to treat any word or clause "'as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.'" Dominion Savings Bank v. Costello, 257 Va. 413, 417, 512 S.E.2d 564, 567 (1999) (quoting D.C. McClain, Inc. v. Arlington Co., 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (1995)). At the same time, we must construe the contract as a whole. Quadros & Assocs., 268 Va. at 55, 597 S.E.2d at 93 (citations omitted). In other words, "the meaning of a contract 'is to be gathered from all its associated parts assembled as a unitary expression of the agreement of the parties.'" Sully Station II Community Assoc., Inc. v. Dye, 259 Va. 282, 284, 525 S.E.2d 555, 556 (2000) (quoting Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983)); see Virginian Railway Co., 152 Va. 254, 258, 146 S.E. 284, 285 (1929) (explaining that a contract's provisions "are to be harmonized when possible" and "effect . . . given to every stipulation when it can reasonably be done").

When all of the provisions of the PSA are considered as a whole and read in context, with reasonable meaning given to each provision, it is evident that paragraph 9 was written with a certainty intended to accomplish one purpose only: to ensure, to the extent possible, that should husband ever elect in the future to file a petition for bankruptcy, the mortgage obligation being assumed by him would not be dischargeable in the bankruptcy proceeding. This prohibition was made possible because, under bankruptcy law, an obligation found to be "in the nature of support" is a non-dischargeable debt under 11 U.S.C. § 523(a)(5). See, e.g., In re Austin, 271

- 12 -

B.R. 97 (Bankr. E.D. Va. 2001) (explaining multi-factor test for determining whether a particular obligation is "in the nature of support" under 11 U.S.C. § 523(a)(5)); see also Marvin v. Marvin, __ Va. App. __, __ S.E.2d __ (Apr. 22, 2008) (holding that attorney's fees awarded in conjunction with enforcement of child support were "in the nature of support" and thus non-dischargeable under 11 U.S.C. § 523(a)(5)). Therefore, when placing this prohibition in paragraph 9 immediately after the parties' express and definitive waiver of any right to demand or receive spousal support from the other, the parties surely had no intent to render paragraph 8 meaningless and create an obligation of spousal support. The fact, however, that husband's third party debt obligation was never spousal support as contemplated by Code § 20-109 does not negate the fact that the obligation could be viewed as "in the nature of support" so as to render the obligation non-dischargeable under bankruptcy law. "'[A] debt could be in the "nature of support" under [11 U.S.C. §] 523(a)(5) even though it would not legally qualify as alimony or support under state law.'" In re Gianakas, 917 F.2d 759, 762 (3rd Cir. 1990) (quoting In re Yeates, 807 F.2d 874, 878 (10th Cir. 1986)).

Apart from considerations of bankruptcy law, I find no authority for a trial court to convert a third party debt obligation to spousal support, which debt obligation was owed to an entity that is not even a party to the action, and then terminate the obligation on the purported authority of Code § 20-109. In short, because husband's third party debt obligation was not spousal support, Code § 20-109 provided no basis to terminate it. Cf. Hardesty v. Hardesty, 40 Va. App. 663, 581 S.E.2d 213 (2003) (*en banc*) (holding Code § 20-109 required termination of former wife's spousal support under the parties' property settlement agreement upon her remarriage, where former husband was, in fact, making spousal support payments to former wife, as contemplated under the statute).

For these reasons, I would reverse the decision of the trial court, and, therefore, dissent.