# COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Chafin and Senior Judge Clements
Argued at Lexington, Virginia

PATSY CASKEY GADPAILLE

v.       Record No. 1868-17-3

CHARLES KEY GADPAILLE

MEMORANDUM OPINION* BY
JUDGE JEAN HARRISON CLEMENTS
JULY 10, 2018

FROM THE CIRCUIT COURT OF ROANOKE COUNTY
William D. Broadhurst, Judge

Jonathan Rogers for appellant.

C. Shawn Potter (Potter Mariano, PLC, on brief), for appellee.

Patsy Caskey Gadpaille (wife) appeals the circuit court's orders regarding spousal support,

retirement, and the former marital residence. Wife argues that the circuit court erred by (1) "finding

sufficient evidence of a material change in circumstance to justify a reduction in spousal support

caused by [husband's] voluntary reduction in employment hours and income"; (2) "finding

sufficient evidence of a material change in circumstance to justify a reduction in spousal support

without a consideration of [husband's] financial resources including his access to retirement funds";

(3) "reducing [wife's] spousal support by its failure to consider and specifically delineate its

consideration of all of the factors enumerated in Virginia Code § 20-107.1"; and (4) "rewriting the

Parties' Agreement," which had been ratified, confirmed, approved and incorporated, but not

merged, into the parties' final decree of divorce, by deducting $210,856.59 from wife's share of

husband's retirement plan even though that "sum did not represent a set-off of positive proceeds

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

from the sale of the marital residence, which is what the Parties clearly had intended." For the reasons that follow, we affirm the decision of the trial court.

## BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Menninger v. Menninger, 64 Va. App. 616, 618, 770 S.E.2d 232, 233 (2015) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 834 (2003)).

Charles Key Gadpaille (husband) and wife married on April 2, 1983 and separated on July 11, 2003. The parties entered into an agreement dated October 4, 2006. The agreement resolved equitable distribution and included a provision that required the parties to sell the former marital residence. The agreement also provided that several enumerated deductions would be made from the gross proceeds of the sale of the former marital residence, and then the net proceeds would be paid to wife. The agreement stated, "This payment to Wife shall be offset against her share of Husband's retirement . . . ." The agreement also divided various retirement assets and provided that wife would be "entitled to one-half (1/2) of Husband's marital interest in the Anesthesiology Consultants of Virginia Money Purchase Plan and Trust Rollover account . . ., as adjusted for gains and losses thereon until the distribution to her *after* giving Husband a credit for one-half (1/2) of the net proceeds of the former Marital Residence." The parties agreed that the circuit court would determine spousal support.

On February 13, 2008, the circuit court entered the final decree of divorce, which incorporated the parties' agreement. With respect to wife's request for spousal support, the circuit court considered the factors in Code § 20-107.1 and found that husband was "not voluntarily under employed in that he is unable to reasonably increase his income by working more days or taking less vacation time." Furthermore, it found that wife had "a need for an

award of permanent spousal support"; however, it anticipated the "likelihood" of spousal support being "reduced substantially to take into account [wife's] ability to work" as long as "there is no persuasive medical evidence of inability to work." The circuit court ordered husband to pay wife $8,035 per month in spousal support, beginning December 1, 2007, and continuing thereafter "until further order of this Court."

On June 9, 2011, the parties appeared before the circuit court on husband's motion requesting relief regarding the former marital residence because the house had not been sold. On or about March 7, 2010, the former marital residence was "significantly damaged" by a fire, and at the time of the hearing, the house was "in a state of disrepair and waste." On July 5, 2011, the circuit court entered an order reflecting the parties' agreement that husband shall have "sole authority to preserve, repair, and sell" the former marital residence, subject to court approval. The order also stated that the "parties agree to reimburse [husband] any necessary and reasonable out-of-pocket expenses incurred for the preservation, restoration, and sale of the Residence. Such reimbursement shall be paid out of the proceeds from the sale of the Residence or as otherwise ordered by this Court."

On July 21, 2015, the circuit court entered an order appointing husband's attorney and wife's attorney as special commissioners to effectuate the sale of the former marital residence. The sale of the former marital residence closed on July 23, 2015. On August 12, 2015, the circuit court entered an order permitting the special commissioners to receive the net proceeds from the sale of the former marital residence and directing them to deposit the funds "into either of their attorney trust accounts pending further Order of this Court."

On October 23, 2015, husband filed a motion to modify or terminate his spousal support obligation. He asserted that his income had decreased since the last court order and that since he

"is reaching retirement age . . .[,] his income will continue to decrease at a significant rate as he enters retirement."

On July 24, 2017, husband, husband's counsel, and wife's counsel appeared before the circuit court to distribute the proceeds from the sale of the former marital residence and to be heard on husband's motion to modify or terminate spousal support. At the beginning of the hearing, wife's counsel requested a continuance because wife was "incapable of travelling to Virginia for this hearing." Considering the number of previous continuances and wife's last-minute request, the circuit court denied the motion. The circuit court explained that it would hear husband's evidence regarding the former marital residence and spousal support and would give wife an opportunity to present evidence regarding spousal support at another hearing.

Husband presented testimony and a written report from Walter C. Jones, who was qualified as an expert in forensic accounting. Jones analyzed husband's income and prepared a cash flow analysis for support purposes. Jones concluded that husband experienced a 36% decrease in his income between 2007 and 2017 and a 91.7% decrease in his cash flow between 2007 and 2017. Jones also reviewed the financial documents related to the repair and sale of the former marital residence. Jones determined that husband's disbursements exceeded the proceeds from the sale of the former marital residence. Jones provided a calculation to show how husband could be reimbursed from wife's share of his retirement.

In addition, husband testified that he was sixty-six years old and had been an anesthesiologist for thirty-seven years. As a full-time anesthesiologist, husband was expected to work sixty to seventy hours per week, with at least one twenty-four hour shift. Husband explained that he worked full-time through 2016, but has since transitioned to retirement, with an expected retirement date at the end of 2018. Husband started the retirement process because he could not "do the job that [he] used to do." He explained, "I have trouble with cases, especially

- 4 -

at night. This is when our big cases come in, where we have very little chance to evaluate the patients, and they're critical, and after being up for 16-17 hours, I just simply can't do that work." Husband testified that he is the oldest person in his practice to begin the retirement process. Husband reviewed his 2017 income and determined that his net monthly income was approximately $8,965.41, whereas his monthly spousal support obligation was $8,035.

Husband also testified about the former marital residence. He explained that before the fire, and unbeknownst to him, wife had reduced the amount of liability coverage on the house and removed husband from the insurance policy. After the fire, wife received the insurance proceeds. The contractors started to repair the house, but stopped when wife did not pay them. Husband used the remainder of the insurance proceeds and his own funds to pay the contractors and complete the work.

After hearing all of the evidence and argument, the circuit court suspended all but $3,000 of husband's monthly spousal support obligation until further order of the court. The circuit court continued the spousal support matter to October 17, 2017, to allow wife an opportunity to present evidence. With respect to the issues regarding the former marital residence, the circuit court considered the parties' agreement and the July 5, 2011 order and, then, determined the total amount owed to husband. The circuit court held that wife has a "net negative proceeds" and that the amount owed to husband shall be paid out of wife's interest in the marital share of husband's retirement. On October 17, 2017, the circuit court entered an order reflecting its rulings from the July 24, 2017 hearing.

On October 17, 2017, both parties and counsel appeared, and wife presented evidence about her need for spousal support. She testified about her numerous physical ailments and medications, as well as her living expenses. After hearing the evidence and argument, the circuit court held that husband had proved that there was a material change in circumstances since the

- 5 -

last support order that warranted a reduction in spousal support. The circuit court found that husband was "unable to safely perform all of the duties of a full-time anesthesiologist" and that his "inability to work full-time is consistent with the other anesthesiologists of a similar age in [husband's] practice who have already retired completely, or are in the retirement process." The circuit court held that despite the reduction in husband's income due to his retirement, he still has the ability to pay spousal support. The circuit court also found that considering her physical and mental conditions, wife had a need for spousal support, even though "her stated expenses [were] difficult to accurately assess . . . ." The circuit court reduced husband's monthly spousal support obligation to $6,500, beginning November 1, 2017. On November 14, 2017, the circuit court entered an order reflecting its ruling. This appeal followed.

ANALYSIS

*Spousal support*

Wife argues that the circuit court "erred in finding sufficient evidence of a material change in circumstance to justify a reduction in spousal support caused by [husband's] voluntary reduction in employment hours and income."

"Upon petition of either party the court may increase, decrease, or terminate the amount or duration of any spousal support and maintenance that may thereafter accrue, whether previously or hereafter awarded, as the circumstances may make proper." Code § 20-109(A).

"Spousal support determinations typically involve fact-specific decisions best left in the 'sound discretion' of the trial court." Brandau v. Brandau, 52 Va. App. 632, 641, 666 S.E.2d 532, 537 (2008) (citing McKee v. McKee, 52 Va. App. 482, 489, 664 S.E.2d 505, 509 (2008) (*en banc*)). "A trial court is vested with 'broad discretion in deciding whether a material change in circumstances warrants a modification in the amount of support.'" Driscoll v. Hunter, 59 Va. App. 22, 35, 716 S.E.2d 477, 482 (2011) (quoting Reece v. Reece, 22 Va. App. 368, 373,

- 6 -

470 S.E.2d 148, 151 (1996)). "[T]he party seeking modification must show, in addition to a material change in circumstances, that the change 'warrants a modification of support.'" Id. at 33, 716 S.E.2d at 482 (quoting Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 794-95 (1997)). "A modification of support is warranted when it 'bear[s] upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay.'" Id. (quoting Moreno, 24 Va. App. at 195, 480 S.E.2d at 795).

Husband proved that his income decreased by 36% and his cash flow decreased by 91.7% since the last support order. Husband explained that as a full-time anesthesiologist, he was expected to work sixty to seventy hours per week, with at least one twenty-four hour shift each week, and as he has aged, his ability to perform his job, especially during that twenty-four hour shift, has deteriorated. He testified that he could no longer "handle the trauma at night[,] . . . the excessively long hours, and . . . some of the more complex cases . . . ." He also informed the circuit court that in his practice, there were no other anesthesiologists, who were the same age, practicing full-time. His practice had an established procedure for allowing doctors to reduce their hours and work toward retirement, and in 2016, husband started this process. After hearing all of the evidence, the circuit court found that given husband's occupation as an anesthesiologist, "he recognizes that his skills are fading as he ages and that he simpl[y] can't safely do what he might have been able to safely do when he was a younger person." The circuit court further found that "this is a fact not only recognized by him, but also recognized by the practice of his firm." The circuit court held that husband had proved that there was a material change in circumstances.

Focusing on one sentence of the circuit court's ruling, wife argues that the circuit court did not properly apply Code § 20-109 when it held that there was a material change in circumstances. While announcing its ruling, the circuit court stated that husband "has shown a

change in circumstances relative to *his ability to earn a living*." (Emphasis added). Wife correctly asserts that the proper standard is husband's ability to pay, not his ability to earn a living. However, "[a]ppellate courts do 'not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied.'" Vay v. Commonwealth, 67 Va. App. 236, 253, 795 S.E.2d 495, 503 (2017) (quoting Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977)). Contrary to wife's arguments, the record clearly shows that the circuit court considered husband's ability to pay spousal support, not his ability to earn a living.

Once the circuit court determined that there was a material change in circumstances, it examined whether a modification of support was warranted. The circuit court noted that the parties' income levels would have dropped if they had stayed married and "at some point reductions would have had to have been made. That's just a function of living." The circuit court accepted husband's explanation for his reduction in income. The circuit court also examined wife's need for spousal support. Although the circuit court questioned some of her reported expenses, the circuit court found that wife had a need for spousal support, considering her physical and mental conditions and inability to work.

In rendering its decision, the circuit court stated that it considered "all of the evidence presented and the exhibits, and the arguments of the attorneys, taking into account the appearance and demeanor of the witnesses on the stand, corroborating evidence and the sometimes lack of corroborating evidence" and "the provisions . . . made with regard to the [marital] property under 20-107.3." The circuit court held that the material change in circumstances warranted a reduction of spousal support to $6,500 per month. Considering the facts and circumstances of this case, the circuit court did not abuse its discretion by finding that

there was a material change in circumstances that warranted a reduction in spousal support based upon husband's transition toward retirement.

*Husband's financial resources and the Code § 20-107.1 factors*

Wife argues that the circuit court erred in reducing her spousal support without considering husband's financial resources and the Code § 20-107.1 factors. Wife did not raise these arguments with the circuit court. We "will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); see also Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."). "The purpose of Rule 5A:18 is 'to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals.'" Friedman v. Smith, 68 Va. App. 529, 544, 810 S.E.2d 912, 919 (2018) (quoting Andrews v. Commonwealth, 37 Va. App. 479, 493, 559 S.E.2d 401, 408 (2002)). Wife does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and the Court will not apply the exceptions *sua sponte*. Id. Thus, we do not consider these arguments.

*Retirement plan / former marital residence*

Wife argues that the circuit court erred in "rewriting the Parties' Agreement" by deducting $210,856.59 from her share of husband's retirement plan even though that "sum did not represent a set-off of positive proceeds from the sale of the marital residence, which is what the Parties clearly had intended." Wife asserts that paragraph 15 of the agreement states that the "net proceeds after deduction [of the agreed-upon disbursements] . . . shall be paid to Wife. This payment to Wife shall be offset against her share of Husband's retirement as more fully set forth in

- 9 -

Paragraph 21 below." Then, paragraph 21 of the agreement states that wife shall receive one-half of husband's marital interest in his retirement plan "as adjusted for gains and losses thereon until the distribution to her *after* giving Husband a credit for one-half (1/2) of the net proceeds of the former Marital Residence." The agreement included the following example to show what wife would receive if the marital residence sold for $710,000 and the net proceeds were $330,000, and the marital portion of husband's retirement plan was $1,162,189 when the house sold:

$581,090.50 (one-half Money Purchase Plan and Trust Rollover
                    account, plus gains and losses on her share)
- $165,000.00 (50% of house net proceeds)
$416,090.50 (Wife receives rolled over to her account or an IRA)

Relying on that example, wife argues that the parties "never contemplated" that the net proceeds from the sale of the house would be a deficiency and reduce her share of husband's retirement. She contends that the agreement showed that the parties intended for her to receive "a positive return" from the sale of the former marital residence and that husband's share of the net proceeds would be deducted from her share of his retirement. In its October 17, 2017 order, however, the circuit court held that husband would be paid $354,475.84 from the net proceeds of the sale of the former marital residence and insurance proceeds, and then, finding he was still owed $210,856.79, it ordered that husband would be paid $305,589.26, which took into consideration the tax consequences, from wife's fifty percent interest in the marital share of his retirement plan. Wife asserts that the circuit court did not follow the parties' agreement when it ruled.

The parties' agreement "is governed by the same rules of construction applied to other contracts." Stacy v. Stacy, 53 Va. App. 38, 44, 669 S.E.2d 348, 350 (2008) (*en banc*). "When a contract consists of multiple instruments, we interpret them together to determine the parties' intent." Driscoll, 59 Va. App. at 30, 716 S.E.2d at 480. "In other words, 'the meaning of a contract is to be gathered from all its associated parts assembled as a unitary expression of the

agreement of the parties.'" Stacy, 53 Va. App. at 48, 669 S.E.2d at 353 (quoting Sully Station II Cmty. Ass'n, Inc. v. Dye, 259 Va. 282, 284, 525 S.E.2d 555, 556 (2000)).

Wife's arguments do not take into consideration the unforeseen fire at the former marital residence, the cost of the home's repairs, and the parties' agreement in the July 5, 2011 order. When the parties entered into the agreement, they did not know that the house would sustain significant fire damage on or about March 7, 2010. Likewise, they did not anticipate the extensive repairs that would be necessary to sell the house and that wife would reduce the liability coverage on the house. The July 5, 2011 order states that the parties agreed that husband would have "sole authority to make decisions regarding the reasonable preservation, repair, and sale of Residence, all subject to Court approval." The July 5, 2011 order also reflects the parties' agreement that husband would be reimbursed for "any necessary and reasonable out-of-pocket expenses incurred for the preservation, restoration, and sale of the Residence . . . out of the proceeds from the sale of the Residence or as otherwise ordered by this Court."

At the July 24, 2017 hearing, husband presented evidence from an expert witness that proved that the disbursements husband had made exceeded the insurance proceeds. He also presented evidence explaining how this deficiency in the proceeds from the sale of the former marital residence would affect wife's share of his retirement. Wife did not present any evidence to contradict husband's expert witness. The circuit court then considered the language in the agreement and the July 5, 2011 order and concluded that "net proceeds or the term proceeds used in both essentially results in a negative number for the wife in the calculation of the retirement fund division." Since the parties agreed in the July 5, 2011 order that husband would be reimbursed for his out-of-pocket expenses associated with the repairs, the circuit court found that paragraph 21 of the parties' agreement allowed for husband to be reimbursed from wife's marital share of his retirement.

- 11 -

Contrary to wife's arguments, the circuit court did not rewrite the parties' agreement when it ordered that husband be reimbursed from wife's share of his retirement; instead, the circuit court considered the totality of the parties' agreement as expressed in their agreement dated October 4, 2006 and the order entered July 5, 2011.

Moreover, the July 5, 2011 order indicated that husband would be reimbursed for his out-of-pocket expenses from the proceeds of the sale of the former marital residence "*or as otherwise ordered by this Court*." (Emphasis added.) Wife did not object to this ruling, nor did she appeal the decision. Therefore, the circuit court had the authority to devise a mechanism for husband to be reimbursed, and it did so by reducing wife's interest in the marital share of husband's retirement.

*Attorney's fees and costs incurred on appeal*

Wife has requested an award of attorney's fees and costs incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). However, since husband has prevailed in this appeal, we deny wife's request for attorney's fees and costs. Rogers v. Rogers, 51 Va. App. 261, 274, 656 S.E.2d 436, 442 (2008).

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.