COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Athey and Senior Judge Haley
Argued at Fredericksburg, Virginia

UNPUBLISHED

SHELLY MARIE SMITH, N/K/A
 SHELLY S. DAVIS
                                                    MEMORANDUM OPINION* BY
v.      Record No. 1137-19-4                        JUDGE RANDOLPH A. BEALES
                                                         APRIL 7, 2020
WILLIAM ROBERT SMITH, III


          FROM THE CIRCUIT COURT OF CULPEPER COUNTY
                      Susan L. Whitlock, Judge

          Monica J. Chernin (Law Offices of Monica J. Chernin, P.C., on
          brief), for appellant.

          Elliott H. DeJarnette for appellee.


        Shelly Marie Smith (now known as Shelly S. Davis) ("Davis") appeals the final order of

the Circuit Court of Culpeper County ordering her to pay William Robert Smith, III ("Smith")

$20,316 in restitution for spousal support payments he made to her after the date of her

remarriage.

                              I.  BACKGROUND[1]

      The parties were married on July 13, 1991, and divorced on November 16, 2015.

Pursuant to the parties' Property Settlement and Separation Agreement and Stipulation ("PSA"),

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Some portions of the record in this case were sealed.  Nevertheless, the appeal
necessitates unsealing relevant portions of the record for purposes of resolving the issues raised
by the parties.  Evidence and factual findings below that are necessary in order to address the
assignments of error on appeal are included in this opinion.  Consequently, "[t]o the extent that
this opinion mentions facts found in the sealed record, we unseal only those specific facts,
finding them relevant to the decision in this case.  The remainder of the previously sealed record
remains sealed."  Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

which was affirmed, ratified, and incorporated (but not merged) into the parties' final decree of divorce, Smith was required to pay Davis the sum of $1,693 per month in spousal support. The PSA provides that, upon Davis's remarriage, "the payments by Husband to Wife for her support and maintenance shall immediately cease forever." On March 18, 2017, Davis remarried. Between April 2017 and August 2018, Smith continued to pay Davis spousal support.

On November 13, 2018, Smith filed a complaint alleging that Davis "failed to advise him of her remarriage," causing him to erroneously continue to pay her spousal support for seventeen months for a total overpayment of $28,781. Davis filed an answer alleging that she notified Smith of her remarriage by regular mail in March 2017 and in September 2017. The answer she filed also stated that she sent a third notice by certified mail in March 2018, which was ultimately returned to her as undeliverable.

The parties appeared before the trial court for a hearing on May 8, 2019, where they agreed that Davis had remarried on March 18, 2017, that she had received seventeen months of spousal support from Smith after the date of her remarriage, that Smith had paid these amounts directly into an account from which only Davis was permitted to make withdrawals, and that Davis had withdrawn each of these payments. Smith's counsel argued that the evidence would show that Smith did not receive any notification of Davis's remarriage until September 2018 when they were both present in court to address a child support issue that is not before us in this appeal.[2] Davis's counsel argued that Davis had notified Smith of the remarriage on three separate occasions and that any amounts deposited into the account over and above the amount of child support that Smith still was required to pay Davis were simply gifts to her.

---

[2] Although Smith's counsel stated that Smith was actually notified of Davis's remarriage in September 2018, the evidence – i.e., Smith's testimony – indicates that the court date in which he received actual notice was in August 2018.

At the hearing, Smith testified that he had lived at the same address in Bristow, Virginia since approximately September 2015, and he agreed that he received his mail at this address. He testified that he was not aware of Davis's remarriage until August 27, 2018, when Smith and Davis were both in court regarding a child support issue. He also testified that he was also made aware on that same date that Davis had changed her address.[3] He stated that, after he learned of Davis's remarriage, he stopped paying spousal support and sent Davis a demand letter by mail and email demanding repayment of the spousal support he had paid her since her remarriage. He indicated that he received an email back from Davis in which she refused to repay him.

Smith testified that, since their divorce, email had been their primary form of communication. Specifically, he stated that Davis had sent him 221 emails since the separation and that he had only received mail from her on three or four occasions. He denied receiving any notification from Davis whatsoever about her remarriage until they arrived at court in August 2018. On cross-examination, Davis's counsel showed Smith an envelope sent by Davis via certified mail on March 28, 2018 addressed to Smith at his residence. She also showed him the letter it contained notifying Smith of Davis's remarriage. Smith denied ever seeing the envelope or the letter.

Davis testified that she had remarried on March 18, 2017, and that she had mailed Smith the first letter via regular mail informing him of her remarriage on March 20, 2017. She testified that she mailed him a second letter, again via regular mail, on September 2, 2017.

Davis also testified that, in March of 2018, she sent a certified letter to Smith informing him of her remarriage. A copy of the envelope, postmarked March 28, 2018, addressed to Smith

---

[3] Pursuant to the divorce decree, both Smith and Davis were required to give each other and the trial court advance written notice of thirty days by regular mail and email (if known) of their intention to relocate – or of any change of address.

and marked, "Return To Sender Unclaimed Unable To Forward" was entered into evidence. Davis stated that, although she sent Smith many emails after the divorce (mostly regarding unpaid medical expenses), he usually did not reply to the emails. However, she said that she did receive payments for requested medical expenses after sending several email reminders. She also stated that she believed that mail was more appropriate for alerting Smith of her remarriage because "mail was more formal."

Davis admitted that she was in court with Smith on two additional occasions between March 18, 2017 and August 27, 2018, and that she did not mention her remarriage to Smith on either occasion. Davis stated that she did not mention the remarriage to him on these two occasions when they saw each other in court because she had already notified him and because she had decided that, since the divorce, all communications between them "needed to be in writing."

At the conclusion of the May 8, 2019 hearing on Smith's complaint, the trial judge stated:

> The Court however cannot find that Ms. Davis met her responsibility until she sent the certified mail receipt that shows that it was returned to sender unclaimed, unable to forward; and so it's clear that at that point, Mr. Smith evidently was sticking his head in the sand rather than accepting the paperwork. So from that point forward, the payments would be deemed to be a gift. Prior to that, she would need to reimburse Mr. Smith.

The trial court entered an order directing Davis to pay Smith $20,316 for the overpayment of spousal support he made to Davis in the period of a little over a year between her remarriage and her attempt to notify Smith of her remarriage by certified mail. The trial court also awarded Smith interest on the award "from date of Judgment and costs in the amount of $129.00."

## II. ANALYSIS

Davis appealed the decision of the trial court, arguing in her first two assignments of error that the trial court erred in finding that she did not meet her obligation to advise Smith of

- 4 -

her remarriage until she sent him the letter by certified mail because neither the PSA nor Code § 20-110 contains such a requirement. She argues that she satisfied her obligation when she sent him the first letter, by regular mail, on March 20, 2017.[4]

A. The Language of the Parties' PSA Controls the Parties' Obligations

Although Davis contends that the trial court erred in its interpretation of Code § 20-110, that statute does not actually control the outcome of this case because Smith and Davis entered into a PSA, and it is the terms of that contract between them that determines the rights and obligations of the parties in this particular case. Relevant to this appeal, the PSA states that Smith must pay spousal support until Davis remarries. It further states:

> It is expressly understood and agreed that in the event of the death of either party or Wife's remarriage at any time subsequent to the execution of this Agreement, "remarried" being defined as actual marriage or Wife's cohabitation for a period of 12 consecutive months or more with another adult as if to all appearances they were otherwise married, then the payments by Husband to Wife for her support and maintenance *shall immediately cease forever. Wife shall have an affirmative duty to advise Husband of her remarriage as soon as it occurs* or cohabitation status after 12 consecutive months have passed.

---

[4] Davis's opening brief contains three assignments of error, which state:

1. The trial court erred by adding a requirement to § 20-110 of the Code of Virginia, 1950, as amended, that notice to the former spouse of remarriage must be made by certified mail.
2. The trial court erred by adding a term to the parties' Property Settlement Agreement, that notice to Former Husband of Former Wife's remarriage had to be via certified mail, despite there being no such language in the Agreement.
3. The trial court's ruling is contrary to the evidence presented and misapplies the law of Virginia, to-wit: excess support payments are gifts, particularly considering the lack of evidence that Former Husband distinguished between child and spousal support when he made unitary payments into the account designated by the parties' property settlement agreement for receipt of spousal support payments. The order for Former Wife to repay Former Husband monies received prior to Former Wife sending certified mail is error.

(Emphasis added). Thus, the issue before this Court is whether the trial court erred in awarding Smith $20,316 for his continued payment of monthly spousal support to Davis well past her remarriage, given this provision of the parties' PSA.

"The trial court's interpretation of the PSA is an issue of law that we review *de novo*." Stacy v. Stacy, 53 Va. App. 38, 43 (2008) (*en banc*). "[A] PSA is governed by the same rules of construction applied to other contracts." Id. at 44. In interpreting the agreement, this Court must

> construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.

Id. (quoting Irwin v. Irwin, 47 Va. App. 287, 292-93 (2005)).

The plain language of the PSA provides that upon Davis's remarriage, Smith's obligation to pay spousal support to her "*shall immediately cease forever.*" The agreement is clear that it is Davis's remarriage – not Davis's notification to Smith of her remarriage – that triggers the cessation of Smith's obligation to pay spousal support. Accordingly, as soon as Davis remarried, Smith's duty to pay spousal support ceased.

The next sentence of the parties' PSA providing that Davis had an "affirmative duty to advise" Smith of her remarriage sets out the requirement that Davis advise Smith of her remarriage "as soon as it occurs" in order to ensure that he was aware that his obligation had ceased. When read as a whole, this provision of the PSA clearly communicates a sense of urgency in Davis's responsibility to inform Smith of her remarriage. The PSA required Davis to not simply provide notice, but gave her an affirmative duty to actually *advise* Smith of her

remarriage "as soon as it occur[red]" so that his payments to her could "immediately cease forever."[5] Davis did not comply with this requirement.

Although both Smith and Davis agreed that, since the separation, Davis had communicated with Smith almost exclusively through email, Davis did not even email him to tell him of her remarriage. Furthermore, despite seeing him in person on at least two occasions in court – where she could have provided Smith with this information in person or asked her attorney to tell his attorney – she failed to do so. Instead, the evidence shows that she continued to remove the support payments from the bank account on the same day or the very next day after Smith deposited not only the child support but also the spousal support. Moreover, while Smith usually deposited child support and spousal support together in one payment into Davis's account, the bank statements entered into evidence show that, immediately following her remarriage, she removed Smith's deposit by making two transfers – one for the child support and one for $1,693 (the exact amount of the spousal support). The trial court could certainly infer from all of this information that Davis knew Smith was still making the spousal support payments.

Reviewing the totality of these circumstances, we conclude that Davis did not satisfy her "affirmative duty to advise Husband" of her remarriage "as soon as it occur[red]" under the terms of the parties' PSA – so that the payments would "immediately cease forever" – when she sent him the two letters by regular mail.[6] She did not actually advise or tell him (or otherwise make sure he

---

[5] At oral argument before this Court, Davis's counsel told this Court that the definition of the word "advise" included "inform."

[6] Smith filed a cross-assignment of error arguing that the trial court erred in not awarding him the full $28,781 he overpaid to Davis between the date of her remarriage and when Davis actually advised him of her remarriage on August 27, 2018, because the letter she mailed by certified mail was insufficient to satisfy her duty under the PSA. However, at oral argument before this Court, Smith stated that he was abandoning his cross-assignment of error – and was

knew) of her remarriage – while continuing to accept and withdraw his payments of spousal support.

B.  Whether Smith's Continued Spousal Support Payments After Davis's Remarriage Are a Gift to Her Under the Circumstances of this Case

In her third assignment of error, Davis argues that any amounts Smith paid over the amount he actually owed were gifts to her under Virginia law.  In support of this contention, she cites to the proposition stated in Sanford v. Sanford, 19 Va. App. 241, 248 (1994), that "[s]upport payments made by an obligated spouse over and above court-ordered monthly support are considered gifts or gratuities."  Sanford and the other cases cited by Davis noting that proposition, however, are readily distinguishable from the case now before us because they involve attempts by the payor spouse to make unilateral changes to the parties' agreement and/or divorce decree.

In Sanford, William Sanford was required – pursuant to an amended property settlement agreement, which was approved and incorporated into a judicial decree – to pay his former wife, Betty Sanford, spousal support.  Id. at 244.  Later, due to a change in his financial position, William Sanford informed Betty Sanford that he would send her more money in addition to that actually due to her under the decree for a period of several months.  Id.  He requested that she treat these additional payments as an advance and allow him to reduce the amount of spousal

_____

no longer asking for repayment of $28,781 but only the $20,316 ordered by the trial court. Because Smith has abandoned this assignment of cross-error, we do not reach it – and likewise do not need to reach the question of whether Davis's letter sent by certified mail would satisfy Davis's "affirmative duty to advise Husband of her remarriage as soon as it occurs" if it had been sent by certified mail right after her remarriage.  Therefore, we do not need to address the trial court's conclusion that Davis fulfilled her obligation under the PSA when she sent Smith a certified letter on March 28, 2018.  The trial court only awarded Smith the $20,316 that he had paid Davis through March 28, 2018 (plus interest from the date of the trial court's judgment). We also conclude that, at least until that point, Davis had not satisfied her obligations under the PSA.

support he paid thereafter.  Id.  Betty Sanford, however, did not agree to credit the additional amounts against William Sanford's future obligations.  Id.  William Sanford proceeded to send Betty Sanford additional money in accordance with his proposed plan – crediting himself for the future obligations – until he ceased making payments completely.  Id. at 245.

Betty Sanford filed a petition to show cause, claiming William Sanford was in arrears on his support obligation for the months when he had paid less than the full amount due under the decree and for months when he failed to pay entirely.  Id.  Before the trial court, William Sanford claimed that he was entitled to credits for his earlier overpayments.  Id.  The trial court found that, although Betty Sanford had not agreed to the arrangement, William Sanford was still entitled to a credit.  Id.  On appeal, this Court reversed the decision of the trial court.  Id.  at 244. This Court held "that because William Sanford was required to pay spousal support in accordance with the terms of the support decree, he was not entitled to credit the amount he paid in excess of his court-ordered monthly support against his future support obligations."  Id. at 243. The Court reasoned that giving William Sanford credit for these payments would permit him to unilaterally vary the terms of the support obligation without petitioning the court for modification or entering into an express agreement with his former wife.  Id. at 248-49.  It stated that

> even a court of equity, in an effort to do equity, cannot disregard the provisions of a lawful decree, nor is such a court justified in offsetting against payments required to be made under such a decree voluntary payments . . . . If a party to such a decree is not satisfied with its provisions relative to . . . payments required to be made for . . . support, such party may always come into court and ask for a modification of the decree.

Id. at 246 (quoting Fearon v. Fearon, 207 Va. 927, 931 (1967) (alterations in original)).

Unlike Sanford, this case does not involve any attempted modification to the parties' PSA or the divorce decree.  Smith, in this case, did not attempt to unilaterally change the terms of the

- 9 -

agreement or alter the timing or amounts owed to Davis. Instead, he continued to pay Davis spousal support in accordance with the terms of the PSA because Davis failed to actually advise or inform him of her remarriage in a manner that alerted him that his obligation had ended. Because Smith did not know that his obligation to pay Davis had "immediately cease[d] forever" when he made these payments, the additional payments he made to her were not gifts.

### C. Davis's Request for Appellate Attorney's Fees

Davis also requests that Smith pay her attorney's fees incurred in this appeal. The PSA provides in paragraph 8 that "each party agrees to be responsible for his or her own respective attorney's fees for the preparation of this Agreement and for any divorce proceedings which may hereafter be filed between the parties." However, the PSA also provides that "[i]n the event that a party defaults on the terms of this agreement, or does not prevail in a motion to review/modify, the prevailing party will have the right to seek attorney's fees to cover the fees and costs incurred from the defaulting or non-prevailing party." In this case, Davis did not prevail on appeal, and, therefore, she is responsible for her own attorney's fees incurred in this appeal. Accordingly, her request for appellate attorney's fees is denied.

### III. CONCLUSION

In short, Davis did not fulfill her affirmative duty to notify Smith of her remarriage as soon as it occurred, despite the unequivocal urgency expressed in the parties' PSA and its requirement that she actually *advise* him of her remarriage as soon as it occurred. Although she mailed him two letters by regular mail in the six months following her remarriage, she did not actually advise him of her remarriage so as to ensure that he had actual knowledge that she had remarried. She acknowledged that she did not attempt to alert him through email, even though email had been their primary form of communication since the separation, and she declined to inform him of the

remarriage on the two occasions when she saw him in person in court – or to have her attorney tell his attorney – until August 27, 2018. Furthermore, during this time, she continued to accept and regularly withdraw the spousal support deposited by Smith into her account each month, despite the PSA's unambiguous language that upon her remarriage, the spousal support payments were to "immediately cease forever."

Furthermore, the case law cited by Davis does not support the proposition that Smith's continued spousal support payments to her under the circumstances of this case were gifts. When Smith made additional payments to Davis, he was not attempting to unilaterally alter the parties' agreement and was not simply providing Davis with numerous gifts, despite their contentious relationship and divorce. Instead, because of Davis's failure to advise him of her remarriage, he believed he was paying Davis in accordance with the required terms of the PSA.

For all of these reasons, especially including the pertinent language of the parties' PSA, we affirm the trial court's judgment directing Davis to repay Smith $20,316 in spousal support payments made after Davis's remarriage in addition to "interest from date of Judgment and costs in the amount of $129.00." Smith has abandoned his assignment of cross-error so we do not need to reach the question of whether Davis needed to repay Smith the additional $8,465 he made in spousal support payments after she sent him the certified letter – or the question of whether Davis's certified letter under these circumstances satisfied the requirements of the parties' PSA for advising Smith of Davis's remarriage.[7]

---

[7] See Commonwealth v. Harley, 256 Va. 216, 220 (1998) ("[C]ourts are not constituted . . . to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative." (quoting City of Fairfax v. Shanklin, 205 Va. 227, 229-30 (1964) (second alteration in original))).

Finally, because Davis was not the prevailing party in this appeal, she is not entitled to appellate attorney's fees under paragraph 8 of the parties' PSA. Therefore, we deny her request for appellate attorney's fees.

<u>Affirmed.</u>