PRESENT:  All the Justices

PALMER & PALMER COMPANY, LLC,
T/A PALMER & COMPANY

v.        Record No. 071373                    OPINION BY
                                         JUSTICE S. BERNARD GOODWYN
WATERFRONT MARINE CONSTRUCTION,                June 6, 2008
INC.

            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                       Thomas S. Shadrick, Judge


     In this appeal, we consider whether the trial court erred

in its interpretation of a contract between Palmer & Palmer

Company, LLC ("Palmer") and Waterfront Marine Construction,

Inc. ("Waterfront") and in its imposition of liability on

Palmer for damage resulting from Waterfront's crane falling

into an abandoned, disconnected septic tank on Palmer's

property.

     Waterfront filed a complaint alleging breach of contract

against Palmer and seeking damages primarily related to repair

of its crane.  Palmer and Waterfront filed joint stipulations

as to the facts of the case, agreed that no material issues of

fact remained in dispute, and submitted the matter for the

trial court's consideration on competing motions for summary

judgment.  The trial court denied Palmer's motion for summary

judgment and, holding that Palmer breached the contract,

granted Waterfront's motion for summary judgment.  The trial

court awarded Waterfront damages plus attorneys' fees. Palmer appeals to this Court.

The facts are undisputed. Waterfront, a marine construction and pile driving company, and Palmer, the owner of the property and the general contractor for construction of a house on 856 South Atlantic Avenue, Virginia Beach ("Lot 2"), entered into a contract. The contract specified that Waterfront would drive foundation piles into the ground on Lot 2.

On August 5, 2004, an employee of Waterfront was operating a crane owned by Waterfront on Lot 2 when the crane fell into a buried septic tank and was damaged. The septic tank was empty and covered with approximately four to ten inches of sand. Prior to the accident, neither Waterfront nor Palmer was aware of the existence of the septic tank. The house previously located on Lot 2 had been demolished before Palmer bought the property; however, the house utilized the City of Virginia Beach public sewage system from at least 1990. No recorded plat, survey, or drawing disclosed a septic tank on the property. Also, the Department of Public Health for the City of Virginia Beach, which is the agency that keeps records of private septic systems in the City of Virginia Beach, had no record of any septic system or tank as having been located on the subject property.

2

Waterfront sought damages from Palmer on a purely contractual basis because of the damage to Waterfront's crane and other expenses related thereto.  The relevant provisions of the contract are as follows:

> 2.1   EXCLUSIONS: . . . Waterfront . . . assumes no responsibility for the following:
>
> . . . .
>
> 2. Removal of underground or overhead obstructions.
>
> . . . .
>
> 2.2   WORK AND/OR SERVICES TO BE PERFORMED BY OWNER PRIOR TO PILE DRIVING:
>
> . . . .
>
> 6. Location, protection, and removal of all utilities in area.
>
> 7. Protection of existing structures.
>
> . . . .
>
> 4.1   ADDITIONAL WORK:  Should additional work such as, but not limited to, underground obstructions such as trees, stumps, rocks, debris, etc. be encountered, an extra charge for equipment, labor, overhead and profit will be charge [sic] at $250.00/hour for removal or augering.

The trial court concluded that Palmer was liable based on the court's combined reading of sections 2.1(2) and 4.1, reasoning that reading those provisions together indicates that Palmer was responsible for removal of underground obstructions.  Additionally, the trial court found that the

3

septic tank was either a utility or an existing structure that Palmer was responsible for under sections 2.2(6) or 2.2(7) of the contract. On March 30, 2007, the trial court awarded Waterfront damages in the amount of $22,696.05 plus attorneys' fees in the amount of $11,006.55.

Palmer argues that the trial court erred in interpreting the contract and imposing liability and damages. Focusing on the language of the contract, Palmer contends that the contract does not reflect an agreement that Palmer would remove or locate an abandoned septic tank. According to Palmer, the trial court created a duty that was not memorialized in the contract.

Waterfront argues that the trial court correctly interpreted the contract. Waterfront states that Palmer is liable under the contract for primarily three reasons. First, Waterfront asserts that sections 2.1(2) and 4.1 demonstrate it was Palmer's responsibility to prepare the work site, which included removing underground obstructions. Second, Palmer failed to "locate and protect existing structures, specifically the septic tank, as required by Paragraph 2.2(7)." Third, section 2.2(6) provides that Palmer was responsible for the location and removal of "all utilities." Arguing that the septic tank is a utility, Waterfront contends

that Palmer breached the contract by failing to comply with section 2.2(6).

Interpretation of a contract is a question of law that is reviewed de novo. PMA Capital Ins. Co. v. US Airways, Inc., 271 Va. 352, 357-58, 626 S.E.2d 369, 372 (2006). When a contract is clear and unambiguous, it is the court's duty to interpret the contract, as written. Winn v. Aleda Constr. Co., 227 Va. 304, 307, 315 S.E.2d 193, 194 (1984). On appeal, this Court is not bound by the trial court's determinations regarding the interpretation of an unambiguous contract. Gordonsville Energy, L.P. v. Virginia Elec. & Power Co., 257 Va. 344, 353, 512 S.E.2d 811, 816 (1999).

In a breach of contract claim, the parties' contract becomes the law governing the case unless it is repugnant to some rule of law or public policy. Winn, 227 Va. at 307, 315 S.E.2d at 194. This Court must construe the contract as it is written. Christopher Assocs. v. J.C. Sessoms, Jr., 245 Va. 18, 22, 425 S.E.2d 795, 797 (1993). "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." W.F. Magann Corp. v. Virginia-Carolina Elec. Works, Inc., 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962).

5

We hold that sections 2.1(2) and 4.1 of the contract do not subject Palmer to liability in this case. In section 2.1(2), the contract states that Waterfront assumed no responsibility for the removal of underground obstructions. The plain meaning of that provision is that the contract price did not include the removal of underground obstructions. Section 4.1 further confirms such an interpretation by stating that Waterfront would charge $250 per hour for additional work resulting from underground obstructions.

The contract indicates that the parties anticipated underground obstructions might be encountered during the project. The contract provides for payment to Waterfront for the removal of any such obstructions. However, the contract does not impose any obligation upon Palmer to remove such underground obstructions or to be responsible for damages caused thereby. Thus, contract sections 2.1(2) and 4.1, whether considered together or separately, do not impose contractual liability upon Palmer for damage to Waterfront's crane caused by a previously unknown underground obstruction. Therefore, the trial court erred in granting Waterfront's motion for summary judgment based on a reading of sections 2.1(2) and 4.1.

Palmer also assigns error to the trial court's ruling that Waterfront is entitled to contractual damages because the

6

septic tank was an existing structure. Under section 2.2(7) of the contract, Palmer is responsible for protecting existing structures. Assuming the septic tank is an existing structure, section 2.2(7) clearly means that Palmer could not hold Waterfront responsible for any damage to the septic tank. However, section 2.2(7) does not make Palmer liable for damage to Waterfront's crane caused when the crane fell into the septic tank. The trial court's holding that the septic tank was such an existing structure therefore does not provide a contractual basis for imposing liability upon Palmer for Waterfront's damages.

Palmer further assigns error to the trial court's holding that the abandoned, disconnected septic tank could be the basis for imposing liability upon Palmer, pursuant to section 2.2(6) of the contract. Section 2.2(6) states that Palmer was responsible for the location, protection, and removal of all utilities. This Court must therefore consider whether an abandoned, disconnected septic tank is a utility. We hold that it is not.

When the interpretation of a contract involves a term that is clear and unambiguous, the term is given its plain meaning. PMA Capital Ins. Co., 271 Va. at 358, 626 S.E.2d at 372. A contractual term, absent a definition in the contract, is construed according to its usual, ordinary, and popular

7

meaning.  See Christopher Assocs., 245 Va. at 23, 425 S.E.2d at 797.  The term "utility" is defined as "a service provided by a public utility" and as "a unit composed of one or more pieces of equipment usually connected to or part of a structure and designed to provide a service (as heat, light, power, water, or sewage disposal)."  Webster's Third New International Dictionary 2525 (1993).

Assuming, without deciding, that an operational septic system is a utility, the septic tank involved in this case is not a utility because there is no evidence that this septic tank is, or ever was, part of an operational septic system. The evidence is uncontroverted that the house previously on the property utilized the public sewer system since 1990. There is no evidence that this septic tank was ever connected to the house that was previously located on Lot 2 or that it was part of an operational septic system.  At best, the septic tank is part of a disconnected septic system that had been abandoned for years; it is one part of a unit that, if operational, would be a utility.  Thus, we hold that the empty, abandoned septic tank was not a "utility" within the intendment of Section 2.2(b) of the parties' contract.

Under the terms of the contract, Palmer did not have a duty to locate or remove an abandoned, disconnected septic

tank.  The trial court erred in holding such a duty existed under the contract.

Palmer also argues that the trial court erred in awarding attorneys' fees.  In view of our disposition concerning Palmer's liability, we hold that Waterfront is not entitled to attorneys' fees pursuant to the terms of the contract.

This Court concludes that the contract contains no provision that would make Palmer liable for Waterfront's damages.  We will reverse the judgment of the trial court and enter final judgment in favor of Palmer.

Reversed and final judgment.