COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Ortiz and Chaney
Argued at Fairfax, Virginia


CHRISTOPHER JAMES FRANCIS

                                        MEMORANDUM OPINION[*] BY
v.       Record No. 0389-24-4              JUDGE DANIEL E. ORTIZ
                                              SEPTEMBER 30, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FREDERICK COUNTY
William W. Eldridge, IV, Judge

Elena Kagan, Assistant Public Defender (Kelsey Bulger, Deputy
Appellate Counsel; Virginia Indigent Defense Commission, on
briefs), for appellant.

Anna M. Hughes, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


After pleading no contest to using a communications system to procure or promote sexual activities by a minor, Christopher James Francis voluntarily signed a plea agreement with the condition that he have "no access for personal use to any internet accessible computers or electronics."  Francis's suspended sentence was subsequently revoked and resuspended three separate times, and each time he signed an agreed disposition reaffirming the restriction on his internet use.  Upon his fourth revocation, Francis moved to strike the internet condition, arguing that it violated the First Amendment.  The trial court rejected Francis's argument and imposed an active sentence of six years and six months.  Francis now argues that the court erred both in finding the condition constitutional and in imposing that length of sentence.  Finding no error, we affirm the judgment of the trial court.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

In 2018, Francis pleaded no contest to using a communications system to procure or promote sexual activities by a minor and attempted indecent liberties. Under Rule 3A:8(c)(1)(C), the parties agreed to a total sentence of ten years of incarceration with all but seven months suspended, and two years of supervised probation followed by three years of unsupervised probation.

The parties also agreed to several specific probation conditions, including that Francis have "no access for personal use to any internet accessible computers or electronics." Nor could "he access social media." Francis could have "[s]upervised access" to the internet "for employment purposes only." He also could "obtain and use a non-internet accessible, basic flip phone" subject to "any restrictions set by the court or probation." The final paragraph of the agreement stated that Francis "acknowledge[d] that each and every particular of the above agreement and the effects thereof ha[d] been full[y] explained by counsel," that he "entered into th[e] agreement freely and voluntarily without promise or threat from any source," and that he "respectfully request[ed]" that the trial court accept the agreement.

By final order entered on February 26, 2018, the trial court accepted the plea agreement and imposed the negotiated sentence of ten years of incarceration, with all but seven months suspended. The trial court also imposed a two-year term of supervised probation; the final sentencing order included the internet restriction condition contained in the plea agreement. Francis also was required to register as a sex offender with the Virginia State Police ("VSP").

---

[1] "On appeal, '[w]e "view the evidence received at [a] revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it."'" *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (alterations in original) (quoting *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018)).

- 2 -

Francis's initial term of supervised probation commenced in February 2018. In September 2018, the probation officer filed a major violation report ("MVR"), alleging violation of the terms of his supervised probation by failing to register as a sex offender, missing appointments with the officer, and being unsuccessfully discharged from sex offender treatment. The Commonwealth subsequently charged Francis in Frederick County with failing to register as a sex offender.

In January 2019, Francis agreed to plead guilty to that charge in a written plea agreement. In exchange, the Commonwealth agreed to a two-year sentence with all but time served suspended and to nolle prosequi a second count of failing to register. Francis also signed an "Agreed Disposition" admitting the alleged violations of his supervised probation. The parties agreed that Francis's suspended sentences on the 2018 convictions would be revoked and resuspended in their entirety. They also agreed that the trial court would extend Francis's supervised probation for two years "under the same terms and conditions as previously ordered." On February 11, 2019, the trial court entered both a final sentencing order and a revocation order effectuating the parties' agreements.

Francis returned to supervised probation in January 2019. The probation officer filed an MVR in June 2019 alleging that the officer "received information" that Francis "was utilizing the internet and had two separate phones." When the officer confronted Francis, he denied "any internet use," including social media. But when the officer inspected Francis's phone, she discovered that it was a smartphone and that he was using both a messaging app and a dating app. The officer also found "multiple photos of his penis as well as multiple videos of him masturbating on the phone." Francis eventually admitted that he had sent the videos to various women and had received "videos of women masturbating." Although Francis initially told the officer that he had only acquired the smartphone "a few days" before their meeting in June 2019,

he eventually confessed that he had obtained it on March 6, 2019. Based on this conduct, the officer alleged that Francis had violated the internet restriction condition, as well as several sex offender special instructions.

Francis subsequently signed another "Agreed Disposition" admitting these violations of his supervised probation and asking the trial court to revoke his suspended sentences and resuspend all but two years of incarceration. The parties again agreed to extend Francis's supervised probation for two years "under the same terms and conditions as previously ordered." On August 4, 2020, the trial court entered a second revocation order consistent with the parties' agreement, thereby imposing a two-year sentence.

After Francis served his first revocation sentence, he returned to supervision. In April 2021, the probation officer filed an MVR alleging that, approximately three weeks after his release from custody, Francis created a Facebook profile with his own name and picture, which he used to "chat with women" that he "d[id] not know." As before, Francis initially had denied using Facebook, admitting it to the officer only after she inspected his phone. The officer also observed a text message from "a woman who stated that she would like to come and visit him with her daughter." Francis had replied that this "would be 'nice.'"

Francis signed a third "Agreed Disposition" admitting the probation violations and asking the trial court to revoke his remaining suspended sentences and resuspend all but one year and six months of incarceration. Once again, the parties agreed to a two-year extension of Francis's supervised probation "under the same terms and conditions as previously ordered." The trial court entered a third revocation order on February 16, 2022, promulgating these terms.

In October 2022, Francis returned to supervised probation after serving his second revocation sentence. In February 2023, the probation officer again submitted an MVR alleging that Francis violated the internet restriction condition by activating accounts on Facebook and

- 4 -

the messaging platform WhatsApp. Francis also allegedly violated the condition requiring him to obey all federal, state, and local laws by failing to register these social media accounts with the VSP, as required by the sex offender registration statutes. Francis confessed to the officer that he possessed an Android smartphone.

In November 2023, Francis moved to strike the internet restriction condition as "unconstitutional because it violate[d] the Free Speech Clause of the First Amendment, which is applicable to Virginia under the Due Process Clause of the Fourteenth Amendment." In support of this argument, he primarily cited *Packingham v. North Carolina*, 582 U.S. 98 (2017). In that case, the United States Supreme Court held that a North Carolina statute prohibiting registered sex offenders from accessing commercial social networking platforms violated the Free Speech Clause of the First Amendment. *Id.* at 101, 107-08. Francis contended that, because he was "effectively banned from using the internet," his condition "far exceed[ed] the scope of the free speech limitation" in *Packingham*.

In its written response, the Commonwealth recounted that, according to the statement of evidence it submitted during Francis's plea colloquy in February 2018, Francis had initiated a sexual conversation with an undercover detective pretending to be a 13-year-old girl named J.L.S. on social media. Francis had then "acknowledged" J.L.S.'s age and expressed in explicit terms his desire to "take [her] virginity" and engage in various sexual acts with her. He also sent a picture of his erect penis. Francis was arrested when he traveled to a physical address he believed was J.L.S.'s address. The Commonwealth asserted that Francis knowingly and voluntarily consented to the internet restriction as part of the "bargained-for consideration" in his plea agreement. It characterized his motion to strike as a request that the trial court "renegotiate the terms of an agreement" the parties reached nearly six years before. The Commonwealth also contended that Francis had agreed "without any contemporaneous objection" to the re-imposition

of the internet restriction in each of the three "Agreed Dispositions" resolving his earlier revocations.

At the revocation hearing, Francis contended that the internet restriction condition was overbroad because virtually "[e]verything is connected to the internet." He acknowledged the Commonwealth's important interest in "protecting victims of sexual abuse" but asserted that such an interest was "not enough to completely wipe out somebody's First Amendment right to engage with . . . the internet." In response, the trial court observed that Francis "apparently agreed to this in his [p]lea [a]greement." Defense counsel replied that the record did not necessarily show that Francis had "consented to an extension of" this condition "on his probation."

The Commonwealth countered that the internet restriction condition was constitutional. It emphasized that it specifically included this provision in Francis's plea agreement to "keep [him] away from victims" in the community and that Francis had been "more than willing" to accept this condition to "be on probation" instead of serving a lengthy prison sentence. The Commonwealth also noted that *Packingham* involved a statutory prohibition rather than a waiver and that defendants often waived constitutional rights to secure the privilege of probation. Moreover, it argued, the trial court already had revoked Francis's suspended sentences multiple times for violating this condition. Each time Francis returned to probation, the probation officer reviewed all applicable conditions—including the internet restriction—with him.

The trial court denied the motion to strike the internet restriction condition.[2] It found that Francis expressly and voluntarily agreed to this condition in his 2018 plea agreement. The trial court stated that "it [was] difficult to understand how" Francis could "now contend that this

---

[2] The trial court determined that it need not decide whether the internet restriction was a "special" condition of supervised probation.

condition of his supervised [probation] was unreasonable when he knowingly and voluntarily agreed to it." Citing *Murray v. Commonwealth*, 288 Va. 117 (2014), the trial court explained that a plea agreement "does not violate the Constitution even though" the defendant "waives important constitutional rights." Alternatively, the trial court held that the internet restriction was constitutional under *Packingham* and this Court's decision in *Fazili v. Commonwealth*, 71 Va. App. 239 (2019).

Moving to the guilt phase of the revocation hearing, Francis admitted that he violated his conditions of probation by failing to register his social media accounts with the VSP. But he denied violating the internet restriction condition. Senior Supervisory Probation Officer Kristen Haight[3] testified that Officer Crowell met with Francis "before he began this most recent term of probation" and "reiterated" that the internet restriction was "still in place." Francis signed a document acknowledging that he understood these terms. Officer Haight further averred that Francis admitted in writing that he had possessed a smartphone and used social media.

"[B]ased on the evidence" before the trial court, it found that Francis had violated the internet restriction condition and revoked his suspended sentences. The advisory sentencing guidelines yielded a range from six months to one year and six months. The Commonwealth recalled Officer Haight during the sentencing phase to review Francis's history on supervised probation, including his three previous revocations. Based on that history, Officer Haight opined that Francis was not amenable to supervised probation. She noted that Francis repeatedly denied using the internet and social media platforms, admitting the violations only when she inspected his phone and confronted him with the evidence.

---

[3] Although the transcript lists the officer's surname as "Hate," the record makes clear that it is spelled "Haight."

The Commonwealth asked the trial court to revoke the entirety of Francis's suspended sentences, amounting to seven years, six months, and two days of incarceration. It contended that by obtaining smartphones and using social media within weeks of returning to supervised probation, Francis was "setting himself up for the real behavior that he want[ed] to engage in." The Commonwealth also noted that Francis already had served two revocation sentences, one of which was longer than the high end of the discretionary guidelines. It asserted that the longest possible sentence was needed to protect the public.

Defense counsel responded that much of Francis's behavior "would be legal for anybody else," and there was no evidence that Francis had sent sexually explicit messages to minors. He was "not going around soliciting minors everywhere," and was "not the boogie man." Rather, "[h]e [was] just not registering properly" as a sex offender.

Francis further contended that "keeping him on probation [was] essentially helping the community stay safe by monitoring him," but imposing the maximum sentence of incarceration and then releasing him with no probation would "not really keep[] the community safe." Instead, Francis asked the trial court "to give him a sentence within the guidelines and continue his probation."

Francis addressed the trial court directly and apologized for his actions. The trial court commended both sides on their arguments and stated that it had "considered the aggravating and mitigating evidence" they presented. The trial court noted that this was Francis's "fourth probation violation on a very serious offense" where he "attempt[ed] to solicit a minor for sex on the internet," and "travel[ed] to the location" where he believed the minor was located. Given these facts, the trial court concluded that the internet restriction was "narrowly tailored for rehabilitation and also to protect public safety."

Next, the trial court stated that, despite agreeing multiple times to abstain from accessing the internet, Francis repeatedly did so soon after being released to supervision. He also hid his internet and social media usage from the probation officer. Francis's conduct since his supervised probation first began in 2018 demonstrated that he could not "control himself," which was "scary for public safety." The trial court explained that, when it found that a defendant in a revocation proceeding had "redeeming qualities" and "rehabilitative potential," it preferred to pursue alternatives to incarceration. But Francis repeatedly had shown that he could not "abide by" the terms of supervised probation and "violate[d] them extremely quickly." Based on that record, the trial court did not "believe" that Francis would be able to successfully complete probation."

The trial court determined that an upward departure from the discretionary sentencing guidelines was appropriate. But the trial court also gave Francis "some credit" for admitting to violating Condition 1. Therefore, it did not impose the maximum sentence as the Commonwealth requested. Instead, it revoked Francis's suspended sentences and resuspended a year and two days, for an active sentence of six years and six months. The trial court ordered Francis removed from supervised probation after he served this sentence.

Francis appealed.

ANALYSIS

On appeal, Francis contends that the trial court erred by denying his motion to strike the internet restriction condition. He also asserts that the trial court abused its discretion in imposing an active sentence of six years and six months.

For the reasons that follow, we affirm the trial court's judgment.

I.  Internet restriction condition

"In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'"  *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (quoting *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013)).  But issues of constitutional interpretation are questions of law that this Court reviews de novo.  *Walker v. Commonwealth*, 302 Va. 304, 314 (2023).

As Francis notes, "general principles of contract law" apply to plea bargain agreements because they are bargained-for exchanges between the parties.  *Thomas v. Commonwealth*, 303 Va. 188, 200 (2024) (quoting *Wright v. Commonwealth*, 275 Va. 77, 79 (2008)).  Once a plea bargain is "embodied in the judgment of [the] trial court," it "become[s] an executed contract."  *Id.* at 201.  "When a contract is clear and unambiguous," a court must interpret it "as written."  *Palmer & Palmer Co., LLC v. Waterfront Marine Constr., Inc.*, 276 Va. 285, 289 (2008).

"The waiver of constitutional rights in a plea agreement is not an uncommon practice." *Murry v. Commonwealth*, 288 Va. 117, 129 (2014).  "With few exceptions, most legal rights— whether common law, statutory, or constitutional—can be waived if the requisite formalities are observed."  *Congdon v. Commonwealth*, 57 Va. App. 692, 695 (2011).  Indeed, a defendant's agreement to plead guilty or no contest by its nature waives the fundamental rights to a jury trial, to the presumption of innocence, and to confront the witnesses against him.  *See Hill v. Commonwealth*, 47 Va. App. 667, 674-75 (2006).  Further, "[a] plea agreement usually entails a defendant pleading guilty" or no contest "'in 'exchange[] for sentencing concessions,' a process in which 'each side may obtain advantages.'"  *Thomas*, 303 Va. at 200 (second alteration in original) (quoting *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984)).

The trial court found that Francis waived any constitutional challenge to the internet restriction condition by expressly agreeing to it in his written plea agreement.  There is no basis for

this Court to disturb that finding.[4] *See Green*, 75 Va. App. at 76. Francis does not contest that he voluntarily signed the plea agreement, which expressly enumerated the internet restriction as a condition of supervised probation. In so doing, Francis "acknowledge[d] that each and every particular of the . . . agreement and the effects thereof ha[d] been full[y] explained by counsel." Further, Francis has never asserted, below or on appeal, that he did not understand what conduct the internet restriction prohibits, and the record would not support such an assertion.

Rather, Francis argues that he did not "knowingly" consent to the internet restriction because he "lacked complete information as to the scope of the First Amendment rights that his waiver of access to the internet implicated." But this assertion simply does not obtain.

The United States Supreme Court's opinion in *Packingham*—which Francis heavily cites in support of his First Amendment argument—is grounded in the critical role that "cyberspace" plays in the exercise of First Amendment rights. 582 U.S. at 98. But the Supreme Court decided *Packingham* in 2017, before Francis signed the plea agreement containing the internet restriction, and Francis was represented by counsel at that time.

In addition, Francis's express consent to the internet restriction condition did not end with the plea agreement in 2018. He subsequently signed three additional written agreements—in January 2019, July 2020, and October 2021, respectively—asking the trial court to extend his supervised probation under the same terms and conditions, including the internet restriction.[5] Moreover, Officer Haight testified at the revocation hearing that a probation officer reviewed all the

---

[4] "[T]o withstand scrutiny on appeal, the record must contain an 'affirmative showing' that the guilty plea was entered voluntarily and intelligently." *Hill*, 47 Va. App. at 674 (quoting *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). But Francis did not challenge the validity of his pleas on direct appeal. Even if he did, the acknowledged plea agreement affirms that Francis "entered into th[e] agreement freely and voluntarily."

[5] Francis does not challenge the validity of any of the three resulting revocation orders that the trial court entered by appealing to this Court.

- 11 -

supervised probation terms with Francis each time he returned to probation. The fact that Francis repeatedly agreed to this condition over the course of several years, all without previous complaint, belies the contention that he did not understand the nature and implications of that concession.

As the Commonwealth argued to the trial court, the internet restriction was a key condition that it demanded in exchange for agreeing to a seven-month active sentence followed by two years of supervised probation. Francis then consented three times to extend that probation under the same terms the parties initially agreed upon. The record amply supports the trial court's finding that Francis waived any constitutional objections to the internet restriction in consideration for the benefits he received in his plea deal. Accordingly, the trial court properly denied the motion to strike that condition.

## II. Revocation sentence

Francis next asserts that the trial court abused its discretion in imposing an active sentence of six years and six months.

Subject to the provisions of Code § 19.2-306.2, after suspending the execution of imposition of a sentence, a trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). "If the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." Code § 19.2-306(C). If the trial court finds that the defendant "has violated another condition other than (i) a technical violation or (ii) a good conduct violation that did not result in a criminal conviction, then the court may revoke the suspension and impose or resuspend any or all of that period previously suspended." Code § 19.2-306.1(B).

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). A trial court abuses its discretion if it fails "to consider a relevant factor that should have been given significant weight"; "consider[s] and giv[es] significant weight to an irrelevant or improper factor"; or "commits a clear error of judgment." *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021). This Court will find an abuse of discretion only when "reasonable jurists could not differ." *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019).

Francis claims that "there was no evidence" that he engaged in "any dangerous conduct . . . during this period of probation." Rather, he argues, the "sole evidence of any wrongdoing" was that he "had been using the internet." He asserts that "the ubiquity of the internet in modern life has made this condition increasingly impossible to abide by." Moreover, Francis asserts that he was "compliant with all the other terms of his probation, had completed a residential treatment, and managed to secure stable housing after struggling with homelessness."

We find no abuse of discretion. The record shows that the trial court considered all the aggravating and mitigating evidence. It concluded that Francis—now on his fourth revocation— could not comply with the terms of supervised probation. Specifically, Francis repeatedly flouted the requirement that he not use the internet and social media platforms and that he comply with the sex offender registry laws. Given the nature and seriousness of Francis's underlying convictions, the trial court concluded that Francis's repeated and flagrant violations of the terms of supervised probation were extremely serious and that a lengthy sentence was needed to protect the public.

That the trial court weighed the aggravating and mitigating evidence differently than Francis, or differently than another "reasonable jurist[]" might, does not render its sentence an abuse of discretion. *Hicks*, 71 Va. App. at 275. "The statutes dealing with probation and

suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of all or part of a sentence, and/or restitution payments." *Howell v. Commonwealth*, 274 Va. 737, 740 (2007). Francis's repeated violation of the terms of his supervised probation after multiple revocations supported the trial court's finding that he was not amenable to rehabilitation. Accordingly, we find no abuse of discretion and affirm the trial court's sentencing order.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*